## MODEL LODGING HOUSE ASSOCIATION *vs.* CITY OF BOSTON.

A second mortgagee's advertisement offering for sale " all the right, title, interest and estate which, by virtue of the power contained in said mortgage and the assignments thereof, I have the right to sell in and to " the mortgaged premises, is not defective though the authority given by the power is "to sell and dispose of the granted premises," the premises being described in the mortgage as "all that lot of land, [bounding it,] subject, however, to a prior mortgage ; " nor is an omission to state that there was a default in the performance of the condition a material defect.

An advertisement of a mortgagee's sale under a power, describing the premises as they are described in the mortgage, is not defective, although the street number of the building has been changed since the making of the mortgage, when it does not appear that the mortgagee knew of the change, and when the number is not given in the mortgage, but appears only upon a plan there referred to.

The sale of an equity of redemption under a power in a second mortgage is not void though the advertisement of sale does not state the amount due upon the first mortgage, even when both mortgages are held by the same person ; and the fact that the mortgagee attempting at the sale, in good faith, to state the amount due, slightly overestimates it, will not invalidate the sale.

An advertisement of a sale of real estate, announcing the sale as "by virtue of the power given" in the mortgage, is not defective for omitting to state that there has been a default in the performance of the condition of the mortgage.

A mortgagee, selling under an ordinary power contained in the mortgage, can sell for cash to be paid at the sale; therefore the requiring but a portion of the purchase money to be paid at once, and the giving time for the examination of title, though not stated in the advertisement, being favorable to the mortgagor, cannot be objected to by him.

A mortgage is not extinguished by being assigned to the wife of the mortgagor, after he has conveyed to a third person all his interest in the estate.

BILL IN EQUITY for the assessment of damages. By St. 1868, c. 277, entitled " An act for the abatement of a nuisance in the city of Boston, and for the preservation of the public health in said city," it is provided that the city of Boston may take certain lands ; that the title of the lands so taken shall vest in the city, and that any person entitled to any estate in any part of the lands so taken may, " as well in his own behalf as in behalf of all other persons " having estates in the lands so taken, file a bill in equity in this court for the assessment of his damages. Under this statute the Model Lodging House Association filed a bill for the assessment of the damages of that corporation in certain land taken, and, among many others who petitioned, Artemas R. Holden, Ellen B. Holden, and Karl Kraft and Anton Stocker, trustees, and Catherine Krumschied, filed petitions for the assessment of damages for their estates in land also taken.

In pursuance of the authority given by the statute, three commissioners were appointed by this court to hear the parties and assess their damages. The portion of their report made to the court which related to the petitions above mentioned was in substance as follows :

These petitions all related to a single parcel of land, with the buildings thereon, numbered 21 and 23 on Chapman Street. Its value at the time of the taking was $6375. March 28, 1863, one Eli Fernald, the then owner of the estate, mortgaged it to one Merrill, to secure the mortgagor's note for $2200 payable in four years, with six per cent. interest, payable semi-annually. September 28, 1866, this mortgage was assigned to Ellen B. Holden, one of the petitioners. The interest upon this mortgage was duly paid till September 28, 1869. At the time of the taking there was due on this mortgage $2304.50.

September 1, 1865, Eli Fernald gave a second mortgage to James Tolman and Albert L. Fernald, to secure his note for $1100 with interest at six per cent., payable semi-annually. The premises were described as " all that lot of land, [giving boundaries,] subject however to a prior mortgage on said lot by me given to one John Merrill, to secure the payment of $2200 and interest." In the description of the premises reference was made to a plan. The buildings, at the time the mortgage was delivered, were numbered 14 on Chapman Street. No number was stated in the mortgage, but they appeared as so numbered on the plan. This mortgage contained a power of sale authorizing the grantees, in case of default, " to sell and dispose of the granted premises " at auction, advertising notice in a newspaper printed in Boston, " once a week in each of three successive weeks." June 1, 1866, Fernald conveyed the premises to one Matthew Haberstroh. September 1, 1866, Tolman and Fernald by deed extended the time of payment of the debt secured by the mortgage for twenty-one months from that date. November 6, 1867, Tolman and Fernald assigned the mortgage and note to Sarah E Fernald. wife of Eli Fernald, the mortgagor, for her sole and separate use. December 4, 1867, Sarah E. Fernald, and her husband in her right, assigned the mortgage and indorsed the note

to Ellen B. Holden.   December 6, 1867, by indenture between Ellen B. Holden and Haberstroh, the time of payment under the mortgage was extended for five years from June 1, 1868, with interest afterwards at $7\frac{3}{10}$ per cent. per annum, payable semi-annually, and the times of payment were changed from September 1 and March 1 to September 28 and March 28 in each year, and the mortgage was not to be affected as a security thereby.   Under this agreement the interest was paid to September 28, 1869.

May 20 and 21, 1868, Haberstroh executed two mortgages bearing respectively those dates, to the petitioners Karl Kraft and Anton Stocker, trustees of the German Loan and Fund Association, to secure the payment of $2304.

December 24, 1868, Haberstroh gave a fifth mortgage to the petitioner Catherine Krumschied, for $1416.

July 13, 1870, an order taking the lands was passed by the city authorities.   May 25, 1870, Ellen B. Holden made a formal entry to foreclose both of the first two mortgages, and the certificate was recorded May 26, 1870 ; and May 27 and June 3 and 10, she published in the Daily Evening Traveller, a newspaper printed in Boston, the following notice :

" Mortgagee's Sale of Real Estate. — By virtue of the power given in a certain mortgage of real estate hereinafter described. from Eli Fernald to James Tolman and Albert L. Fernald, dated September 1, 1865, and recorded in the Suffolk Registry of Deeds, book 863, fol. 309, and by said James and Albert assigned to Sarah E. Fernald, and by said Sarah and her husband assigned to me by an assignment recorded in said registry, book 913, fol. 23, I shall sell at public auction, on the premises, on Saturday, the eighteenth day of June next, at five o'clock in the afternoon, all the right, title, interest and estate which, by virtue of the power contained in said mortgage and the assignments thereof, I have the right to sell and convey in and to all that lot of land, [bounding and describing it as it was bounded and described in the mortgage,] subject however to a prior mortgage given to John Merrill, now held by me by assignment, together with all my rights under said first mentioned mortgage, including the

entry and possession to foreclose the same by me, which entry is not waived by this sale. And also without impairing my rights under said mortgage given to said Merrill and assigned to me, and my entry and possession to foreclose the same."

At the time appointed, the auctioneer read aloud the following terms of sale : " The usual time of ten days will be given to examine the title. I understand the incumbrances below the mortgage on which we sell to be as follows, but on that point the seller takes no responsibility, and only states as far as she is informed. In selling she sells only the right, title, &c., according to the advertisement, without warranty or agreement of any kind.

| | |
|---|---:|
| The first mortgage held by Mrs. Holden is  .  | $2200 00 |
| Interest  .  .  .  .  .  .  . | 117 92 |
| Taxes for 1869  .  .  .  .  .  . | 63 02 |
| Taxes for 1870, probably .  .  .  . | 70 00 |
| Policy of insurance, which purchaser can have at its cost .  .  .  .  .  .  . | 5 00 |
| Some interest due probably on taxes for 1869. | |
| | $2455 94 |

" Making in round numbers about $2500.

" The sale, however, is expressly subject to the above named first mortgage, and the deed will be so drawn. The purchaser can have an assignment of the first mortgage at once, by paying the amount due. Possession has been taken on both mortgages, for the better protection of the title. We shall require of the purchaser a payment of $100, immediately after the sale, to bind the bargain."

To these terms of sale was annexed a copy of the advertisement cut from the newspaper, which was also read. There was also annexed the following agreement for the purchaser to sign:

" Boston, June 18, 1870. I hereby acknowledge to have this day purchased of G. M. Atwood, auctioneer, the estate set forth in the annexed printed advertisement, for the sum of $     , and I hereby agree to comply with the terms of sale, as stated by the auctioneer and hereto annexed."

The estate was purchased by the petitioner Artemas R. Holden, and the commissioners reported that they found that the sale was without fraud. Chapman Street was renumbered in 1866, and the houses standing on this land were then numbered 21 and 23. The commissioners found that, at the time of the taking, Ellen B. Holden had an estate in mortgage in the premises of the value of $2304.50, and that the estate of Artemas R. Holden was $4071.50, and that the other petitioners had no estates in the premises, unless the court should determine that the sale under the mortgage was invalid. The commissioners then reported the value of the estates of the other petitioners if that sale was invalid. To this report Kraft and Stocker, trustees, and Krumschied, filed exceptions.

The case was reserved, upon the report of the commissioners and the exceptions taken thereto, for the consideration of the full court.

*E. M. Bigelow*, for Kraft, Stocker, and Krumschied, among other things contended that the amount of interest due upon the prior mortgage was overstated at the sale by the sum of $22.22.

*A. Russ*, for A. R. Holden.

MORTON, J. The principal question raised by the exceptions to the report of the commissioners is as to the validity of the sale made by Ellen B. Holden under the power contained in the mortgage from Fernald, of which she was the assignee.

For the purposes of this hearing, all the facts found by the commissioners are to be taken to be true, and we must therefore assume that the sale was made in good faith and without fraud. On the twenty-fifth day of May, 1870, Mrs. Holden, being the owner of the first two mortgages, entered upon the premises for the purpose of foreclosure, and on the twenty-seventh day of May, and on the third and tenth days of June, 1870, published in a newspaper printed in Boston, notice of a sale under the power contained in the second mortgage. At this time there was a default in the payment of the interest upon the note secured by the second mortgage. It is not necessary to consider the precise effect of the agreement made December 6, 1867, changing the rate of interest, and the days on which the semi-annual payments were to

be made, because the interest was overdue at the time of the entry, whether it is to be computed and paid according to the original note or the new agreement. There being then a default, the holder of the mortgage had a right to enter and sell the premises, and the only question is whether there was a due execution of the power on the part of Mrs. Holden, so as to give a *bonâ fide* purchaser a good title at law. We are of opinion that the proceedings were in compliance with the requirements of the mortgage, and were valid.

It is objected that the advertisement was defective, because it offers for sale " all the right, title, interest and estate which, by virtue of the power contained in said mortgage and the assignments thereof, I have the right to sell and convey in and to " the mortgaged premises. The argument is, that the power authorizes the advertisement and sale of the " granted premises," which had been previously described in the mortgage to be " all that lot of land," &c., subject to a prior mortgage of $2200 and interest, and that the advertisement should have followed the description in the mortgage. But the legal effect of the advertisement is the same as if the language of the mortgage had been used. The power authorized her to sell an equity of redemption merely, and not the fee of the land. The advertisement offers for sale all that she could sell under the second mortgage. It could mislead no one, and was a substantial compliance with the power.

It is also objected that as the number of the mortgaged premises on Chapman Street had been changed, the advertisement should have stated the present number. The advertisement contains a full description of the premises by metes and bounds, being the same description given in the mortgage, with a reference to the record thereof in the registry of deeds. We think this was all that could be required of the mortgagee. It does not appear that she had any knowledge that the number had been changed, and her proceedings, taken in good faith, and otherwise sufficient, cannot be invalidated by the acts of others of which she had no knowledge.

The objection that the sale was invalid because the notice did not contain a statement of the amount due on the first mortgage,

cannot be sustained. In ordinary cases, where the two mortgages are held by different persons, the second mortgagee could not know what was due on the first mortgage ; and he is not obliged to state in his notice what he supposes to be due, subject to the risk of defeating his rights if he is misinformed. The mortgagor can protect his rights by ascertaining this fact and giving notice of it at the sale, if deemed necessary. In this case Mrs. Holden held both mortgages, but we think the rule is the same, so far as the sufficiency of the notice is concerned. If she had declined at the sale to state what amount was due on her first mortgage, it would have had a bearing upon the question of her good faith in the transaction. But she attempted, in good faith, to state the amount due, at the sale, and the fact that she stated the amount to be a trifle larger than it appears to be, ought not to invalidate the sale, and defeat the title of a stranger who found the proceedings correct in form, and purchased in good faith. The omission to state in the notice that there was a default in the performance of the condition of the mortgage is not a material defect. The statement that the sale is by virtue of the power given by the mortgage, necessarily implies that there has been a default, and the omission to state it in express terms can injure no one.

The objection that the notice is defective because it did not state that one of the terms of the sale would be that one hundred dollars should be paid down to bind the bargain, cannot prevail. The mortgagee had the right under the power to advertise the sale as a sale for cash, and to require the whole price bid to be paid at the sale. The notice, therefore, was sufficient in this respect. The terms adopted at the sale, giving the bidder ten days to examine the title, and requiring one hundred dollars to be paid down, though a departure from the notice, were clearly more favorable to the mortgagor, and he cannot object to them.

It is further urged that the second mortgage was extinguished by its assignment to Mrs. Fernald, the wife of the mortgagor. The mortgage was assigned to her in November, 1867, and she assigned it to Mrs. Holden in December, 1867. Eli Fernald, her husband, conveyed the premises, subject to the two mortgages, to Haberstroh in June, 1866. He had no interest in the premises

while his wife held the mortgage. The relation of husband and wife may have prevented Mrs. Fernald from suing him upon the note, but it did not extinguish the debt and mortgage, or prevent its transfer to Mrs. Holden. *Bemis* v. *Call*, 10 Allen, 512.

The result of the whole case is, that the finding of the commissioners that the sale to Artemas R. Holden was valid, and that the title to the premises passed to him by the sale and conveyance, subject to the first mortgage, must be sustained. It is therefore unnecessary to consider the ruling of the commissioners as to the rights of Catharine Krumschied under her mortgage, in case the sale should be adjudged to be invalid.

*Exceptions overruled.*