BUTLER BUILDING AND INVESTMENT COMPANY, *Appellant*, v. DUNSWORTH *et al.*

Division Two, December 6, 1898.*

Deeds of Trust: ASSIGNMENT OF NOTES: GUARANTY: DEFAULT IN INTEREST. A landowner executed a principal and five coupon interest notes to a mortgage company, and secured their payment by a deed of trust, which provided that the trustee might sell the property "if default be made in the payment of said bond or any part thereof or of any coupons thereto annexed when the same shall become due." The mortgage company sold and assigned all the notes to defendant, and guaranteed their payment. Afterwards when the coupon notes became due the holder indorsed them for collection and sent them to

*NOTE.—Decided November 7, 1898. Motion for rehearing filed; rehearing denied December 6, 1898.

the mortgage company. The mortgage company paid them, but whether with its own money or with that of the grantor in the deed of trust does not appear. Upon default of the debtor in the payment of the coupons, the mortgage company declared a forfeiture, and prepared and sent to the trustee a notice of sale, which recited that the coupons were in default. At the trustee's sale the purchaser bought and paid for the land without any knowledge that the coupons had been paid by the mortgage company, and by *mesne* conveyances the plaintiff acquired his title, and subsequently the defendant, the holder of the bond, who testifies that he was ignorant of the mortgagor's default, and of the sale by the trustee, and insists that there were no unpaid coupons and that the first sale was without authority from him, caused the land to be sold under the same deed of trust to satisfy the principal debt or bond, and bought it in. *Held,*

1. If the maker of the notes was in default the trustee was authorized to sell, whether or not the mortgage company had made good its guaranty; for, *first*, it was the maker's default that authorized the sale; and, *second*, when the notes were reindorsed to the mortgage company it became the legal owner thereof; if it had paid for them out of its own funds, it became their full equitable owner, and along with their ownership went the deed of trust as security for their payment; *third*, if the mortgage company did not pay for the notes, their reindorsement to it for collection authorized it as agent for the real owner to declare a forfeiture.

2. It is not essential that all the beneficiaries of a deed of trust should unite in a request to the trustee to sell. Therefore, the owner of the coupons could, upon default in their payment by the maker, declare a forfeiture and direct a sale without consulting the owner of the bond or principal note.

3. The statement of the trustee in his deed that certain coupon notes are due and unpaid, is, as to all persons without notice to the contrary, the statement of the *grantor* and *cestui que trust* in the deed of trust. And such recital in his deed is by statute *prima facie* evidence of its truth; and in this case the evidence of the defendant did not rebut the *prima facie* case.

4. If the trustee made a false recital in his deed, the owner of the principal note has his remedy against him for the damage.

5. The first sale by the trustee to satisfy the interest or coupon notes was valid and conveyed the legal title, and the plaintiff, being an innocent purchaser for value and without notice, is the owner of the land, and is not affected by the contractual relations between the defendant and the mortgage company.

*Appeal from Bates Circuit Court.*—HON. JAMES H. LAY, Judge.

REVERSED (*with directions*).

*Thomas J. Smith* for appellant.

(1) By his deed of trust Barnett conveyed the legal title to Perkins, but which he should convey, even without following the strict terms of the deed, and in the event of his refusal to act, the then sheriff Hartsock had the same power. *Schanewerk v. Hoberecht*, 117 Mo. 22; *Lanier v. McIntosh*, 117 Mo. 518; *Kennedy v. Siemers*, 120 Mo. 86; *Springfield E. & T. Co. v. Donovan*, 120 Mo. 127; *Snyder v. Railroad*, 131 Mo. 580. (2) Every condition precedent to a right in the sheriff to make the sale was apparent, and appeared in the notice of sale and were recited in the deed of conveyance, and the purchaser therefore had no constructive notice of there being any irregularity in the proceedings. Under these circumstances both legal and equitable title passed by the first sale and conveyance to the purchaser. *Schanewerk v. Hoberecht*, 117 Mo. 22; Wade on Notice, sec. 62; 1 Parsons, Notes & Bills, p. 261; 16 Am. and Eng. Ency. Law, 841. (3) The sheriff as acting trustee under the deed of trust was the agent of the holder of the paper secured by the trust deed, and therefore his acts are binding on defendant, Loomis. 2 Jones on Mortg., sec. 1771; *Sherwood v. Saxton*, 63 Mo. 78; *Hill v. Pace*, 61 Mo. App. 117. (4) Under the provisions of the deed of trust upon default by the maker, Barnett, in the payment of any of the coupons, the trustee, or in case of his refusal to act, the sheriff, had a perfect right to make the sale without a request from Loomis, since such is not required in this deed of trust as a condition

precedent to the sale by the sheriff, the only condition being default in payment, refusal of Perkins and requisite notice, all of which conditions existed. *Wood v. Augustine*, 61 Mo. 46.

*T. W. Silvers* for respondents.

(1) It can not be successfully maintained, that, Hartsock, the sheriff had power to sell the land in controversy, under the deed of trust until default was made in the payment of the indebtedness, or some part of it. The trustee's power is conditional. Until the conditions are broken he could not sell. His authority is limited by the trust deed. The record of which is notice to all buyers. If he sell in direct violation of his trust, as he attempted to do under the paid coupons, in this case, a deed from him would probably not convey the legal title; and would certainly not convey the equitable title. The first deed made by the sheriff trustee was void both at law and in equity. *Hume v. Hopkins*, 140 Mo. 74; *Thornburg v. Jones*, 36 Mo. 514; *Eitlegeorge v. Bldg. Ass'n*, 69 Mo. 55; *Koehring v. Muemminghoff*, 61 Mo. 408; *Goff v. Roberts*, 72 Mo. 570; *Ohnsburg v. Turner*, 87 Mo. 127; *Scheidt v. Crecelius*, 94 Mo. 327; *Long v. Long*, 79 Mo. 651; *Ins. Co. v. Jackson*, 83 Ill. 302; *Redmond v. Packingham*, 66 Ill. 434. (2) The mere fact that the coupons were indorsed back to the company did not carry with such indorsement the lien on the land, as is the ordinary rule in the transfer of negotiable paper. An indorsement as between interested parties with notice is subject to explanation. The transfer of the lien on the land to have been effectual must have been intentional. It should have been understood by both parties to the transfer. When Loomis parted with his coupons, he supposed they were being paid. He had

no idea when he "indorsed these coupons and deposited them for collection that he was parting with his security for the principal debt. And for the guarantor to set up a claim to the security on payment of the coupons, was a breach of common honesty, as well as a violation of the understanding, and contract under which it got possession of the paper. The payment by the guarantor extinguished the lien so far as the coupons were concerned. As to the contract of guaranty see 9 Am. and Eng. Ency. Law, 67; *Shurtleff v. Francis*, 118 Mass. 154; *Johnson v. Lewis*, 13 Minn. 364; 15 Am. and Eng. Ency. Law, 843, n. 7; *Nelson v. Brown*, 140 Mo. 589. (3) Canterbury can not be considered an innocent purchaser without notice. He bought it in market overt. He who buys at a trustee's sale at auction under a deed of trust, buys at his peril. The rule *caveat emptor* obtains. *Schanewerk v. Hoberecht*, 117 Mo. 28; *Stephens v. Clay*, 17 Colo. 489; 26 Am. and Eng. Ency. Law, 934; *Hamilton v. Lubukee*, 51 Ill. 415; *Thompson v. Haywood*, 129 Mass. 401; *Pierce v. Gromley*, 77 Mich. 273; *Fleming v. Holt*, 12 W. Va. 143; *Schradski v. Albright*, 93 Mo. 42; *Mann v. Best*, 61 Mo. 490.

GANTT, P. J.—The facts in this case are that Barnett, the owner of a farm, in Bates county, borrowed $1,250 of the Western Farm Mortgage Trust Company, of Lawrence, Kansas, and gave his bond for that amount and coupon interest notes payable semiannually. The mortgage company sold and assigned the bond and guaranteed the principal and interest to one Loomis of New York. Interest coupons numbered 2, 3, 4 and 5 became due and Loomis indorsed them for collection and deposited them in his bank, the Manufacturer's National Bank of Brooklyn, and the interest was paid by the Western Farm Mortgage

Company. Whether the mortgage company paid it on its guaranty out of its own funds or collected it from Barnett does not clearly appear. After the interest coupon No. 5 had become due, the mortgage company sent a list of its borrowers in Bates county who had defaulted in payment of interest, to George M. Canterbury, who was its local agent, and from that list it appeared Barnett was in default. Later on the company's attorney, Mr. George J. Barker, sent the refusal of the original trustee to act, and a notice of sale for the sheriff to give, as a substituted trustee under the terms of the trust deed. Canterbury handed these papers to the sheriff. This notice recited that these coupons 2, 3, 4 and 5 were in default and the sale would be made to collect the same. The sheriff sold the land and Canterbury bought it without any knowledge that the coupons had been paid, if indeed they had been, by Barnett. Canterbury afterwards conveyed the land by warranty deed to Kipp. Kipp quitclaimed to Emery and Emery to the Butler Building and Investment Company, the plaintiff in this action. Subsequently Loomis, who testifies he was ignorant of the default of Barnett and of the sale to Canterbury, *caused the land to be sold under the same deed of trust to satisfy the principal debt, and bought it in.* He insists there were no unpaid coupons, and that the first sale was without authority from him, and that he is entitled to have the first deed declared void and a cloud on his title. The circuit court found that there was no default in interest and no power to sell, but that Canterbury and those who obtained the title were innocent purchasers, and neither knew, or had reason to suspect that the interest had been paid but thought it was defaulted. Upon these facts the contentions of counsel are predicated. For defendant it is insisted that the first sale or foreclosure was void, because the right to

foreclose had never vested in the sheriff as the interest
had been regularly paid, and the trial court so held.
Plaintiff insists that the legal title passed by the sale
and exhausted the power and that it is a *bona fide* pur-
chaser for value and without notice. Neither party
called Barnett, the maker, to prove his actual default.
The truth as to this point might have assisted us some-
what in reaching a conclusion. We agree with the
learned circuit court that the evidence tends most
strongly to prove that Canterbury and those purchasing
from him were innocent purchasers for value and with-
out notice that the interest was paid. The ordinary
reasonable deduction to be drawn by Canterbury from
the facts occurring prior to and down to the first sale
was that Barnett was in default. The sale was being
made for interest notes which the record disclosed were
past due if not paid. The agency having the collection
of this interest in charge reported it unpaid, and the
papers were prepared and sent to him to hand to the
sheriff for sale. He testified that when he bought he
supposed the interest was in default, and is of opinion
that he himself notified Barnett of the default. Mr.
Loomis testifies he indorsed the coupons for collection
and they were paid by the Western Farm Mortgage
Trust Company. It thus very clearly appears that this
mortgage company held the securities which it declared
were in default, and directed the sheriff as substituted
trustee to sell. If in fact Barnett was in default the
trustee was authorized to sell, notwithstanding the
mortgage company had made good the interest under
its guaranty. Its payment did not release Barnett. It
was Barnett's default, not the mortgage company's,
which authorized a sale. Barnett's failure remained,
although the mortgage company had protected its guar-
anty. By reindorsing the coupons to the mortgage
company that company became the apparent legal

owner thereof, and if it paid the interest out of its own funds the full equitable owner also of said coupons, and the deed of trust stood as a security for their payment. In either case, however, as the ostensible owner or agent in charge of the coupons, the mortgage company as to third persons was clothed with the *indicia* of authority to declare a forfeiture, and it is a significant fact that Barnett, the mortgagor, living in the county, has never disputed the truth of the recitals in the notice of sale, and the trustee's deed thereunder.

Stress is laid in the answer upon the fact that Loomis did not request a sale to be made. Two answers may be made to this contention.

*First.* The deed of trust does not make it essential for him to do so, but simply provides, that "if default be made in the payment of said bond or any part thereof or any of the coupons thereto annexed when the same shall become due," then the trustee, or in case of his disability or refusal to act, the sheriff of Bates county, may proceed to sell the property. It was not essential that all the beneficiaries should unite in a request to sell. The deed of trust stood as a security for the debt and coupons, and it was sufficient to authorize a sale that there was a failure to pay these coupons 2, 3, 4 and 5. The guaranty of the coupons in no way released the mortgagor, it simply rendered the mortgage company personally liable.

*Second.* The deed of trust was a security for the coupons as much as the bond, and the mortgage company was clothed with authority to order the sale when they were not paid whether it is regarded as agent of Loomis, or as the owner, by virtue of the reindorsement to it, and its payment, of the coupons. *Wood v. Augustine*, 61 Mo. 46. Having the apparent authority in the one instance, and the real authority in the other, to order a sale, and having directed it, and the author-

ized trustee having, both in his notice and deed, stated said coupons were due and unpaid, can an innocent purchaser at his sale, for value, and without notice of the condition of the account between the mortgage company and Loomis, be affected by the fact that instead of collecting the interest from Barnett, the company paid Loomis on its guaranty, and that Loomis in fact was ignorant of Barnett's default on the interest coupons? The answer must be reached by the application of the law of principal and agent.

In general when a person acts as the agent of another who is known as the principal, his acts and contracts within the scope of his authority are considered the acts of his principal. As to third persons the sheriff of Bates county, the substituted trustee, was the agent of Barnett, the grantor in the deed of trust, and of Loomis, the beneficiary and holder of the bond and interest coupons. *Sherwood v. Saxton*, 63 Mo. 78; *Goode v. Comfort*, 39 Mo. 313; *Carter v. Abshire*, 48 Mo. 300; *Chesley v. Chesley*, 49 Mo. 540; *Hull v. Pace*, 61 Mo. App. 117.

He was also trustee for both the mortgagor and the mortgagee. In making the sale he was unquestionably acting within the scope of the authority conferred by the deed of trust. As to all persons without notice to the contrary his representation that the interest coupons 2, 3, 4 and 5 were due and unpaid, was the statement of his two principals, and binding upon them. But in addition to this, by statutory enactment in this state (section 7103, R. S. 1889), the recitals in his deed are *prima facie* evidence of the truth of the facts stated. In his deed the sheriff recited that Barnett had defaulted in the payment of the interest coupons Nos. 2, 3, 4 and 5; that the original trustee had refused to act, and that the sale was made in pursuance of the power

conferred by Barnett's deed of trust. The circuit court has found that Canterbury had no notice that these coupons were not in fact unpaid but believed they were. So believing, he bought the land at the sale and paid his money and obtained his deed. He subsequently sold by warranty deed to Kipp. Whatever recourse Loomis may have against Hartsock, the sheriff, if he made a false recital, it seems clear to us that he is bound by the representation of his agent and trustee, and can not now disaffirm his act. As to the innocent purchaser at the said sale Loomis is estopped from asserting that the coupons were unpaid, and to insist that the occasion authorizing the trustee to sell had not arisen. The sale having been made within the scope of the powers conferred, the trustee's deed passed the legal title and exhausted the right to sell. *Schanewerk v. Hoberecht*, 117 Mo. 22; *Kennedy v. Siemers*, 120 Mo. 86; *Snyder v. Railroad*, 131 Mo. 580.

Having found that Canterbury and those claiming under and through him were innocent purchasers for value and without notice, and all the other material facts appearing in the written documents, we think the learned circuit court erred in holding that no title passed because Mr. Loomis testified the interest was not in default. While Loomis so testified his statement must be considered with his other testimony in that connection in which he distinctly says he reindorsed these interest coupons "for collection," and they were in fact paid by the Western Mortgage Company. He does not testify that Barnett, the mortgagor, paid them, nor that he was in default. His testimony does not rebut the *prima facie* recital of the trustee that Barnett was in default. Being under contract to collect these coupons, having received them by reindorsement for that purpose, it must be held that the mortgage company was authorized to declare the forfeiture, and

direct the sheriff to proceed to sell, and that the purchaser, who was ignorant of the contractual relations between the mortgage company and Loomis as to the guaranty of the collection of this interest, is not affected by the fact that the mortgage company may have paid the interest in its collateral undertaking, and then proceeded to compel Barnett, the primary debtor, to pay by foreclosing his deed of trust.

It follows the judgment must be and is reversed with directions to enter judgment for plaintiff.

SHERWOOD and BURGESS, JJ., concur.