VERNIE VERDON, Appellant, v. L. J. SILVARA, MAX ABRAMOWITZ, RUTH B. RUNKLE, MINNIE MOVITZ and SOL MOVITZ, her husband, and OVERTON H. GENTRY, JR., Sheriff and Substitute Trustee.

Division Two, June 5, 1925.

1. **DEED OF TRUST**: Foreclosure: No Default: Usury: Void Pledge.
A sale made by the trustee in the deed of trust at a time when there is no default in the payments due on the indebtedness which it secures is void. The payee of a note, payable in monthly installments, had by warranty deed conveyed a lot to the maker, and received from him a deed of trust securing the payment of the note. Afterwards, when it was discovered that a previously issued sewer-tax bill was an outstanding valid lien against the lot when the conveyance was made, it was agreed that the maker should pay the tax bill and receive credit for the amount on the note. He paid the tax bill, but the payee did not credit the amount upon the note, but pledged the note as collateral security for the payment of another note. The pledge was invalid and illegal, because said other note was usurious, but the pledgee, when the usurious note became due and was unpaid, sold the pledged or original note to a defendant, who by the exercise of reasonable diligence might have known that the payee had agreed to credit the amount of the tax bill on the note and had failed to keep his agreement, and likewise might have known that the pledge was usurious. Afterwards, when it appeared from the face of the note that there was a default in the payment of monthly installments, although if the amount paid on the tax bill had been credited thereon there was no default, the said defendant

(the purchaser in unlawful possession of the note) requested the person first named as trustee to foreclose the deed of trust and was informed by him that there was no default in the payment of the monthly installments, and upon the refusal of said trustee to act he induced the sheriff, as substitute trustee, to sell the lot, and at the sale bought it in and received the sheriff's deed. *Held*, that there was no default in the payment of the note, and the sale was *coram non judice* and void.

2. **USURIOUS NOTE: Pledge of Legal Note as Collateral Security.** A note for $400, due six months after date, to bear six per cent interest, for which the maker receives $373 cash, being $400 less $15 commission to his agent and $12 interest for six months in advance, is a usurious transaction, in that the payee receives for the use and forbearance of the money loaned interest in excess of eight per cent per annum; and a pledge of another note, payable to the maker as collateral security for the payment of said $400 note, is invalid and illegal; and where the pledgee, after the $400 note becomes due, sells and delivers said pledged or collateral note, the purchaser does not obtain lawful possession thereof, and has no right to procure the foreclosure of a deed of trust securing its payment.

3. ——: ——: **Sale of Interest of Maker to Payee.** Where a note secured by deed of trust on real estate was pledged by the payee as collateral to secure the payment of another note which was usurious because of excessive interest paid, and for that reason the pledge was illegal, and the pledgee sold the note to another who caused the deed of trust to be foreclosed and received the trustee's deed, and the payee of the note, after suit is brought by the maker to set aside the sale, transfers all his interest therein to the maker and claims no further interest therein, the note should be surrendered to the maker, and the sale and deed be set aside.

Citations to Headnotes: Headnote 1: Mortgages, 27 Cyc. p. 1451. Headnote 2: Usury, 39 Cyc. p. 971; p. 995. Headnote 3: Usury, 39 Cyc. p. 995.

Appeal from Jackson Circuit Court.—*Hon. Thomas B. Buckner*, Judge.

REVERSED AND REMANDED.

*J. L. Oldham* and *G. W. Stubbs* for appellant.

(1) The $400 note in question was tainted with usury and therefore the pledge or hypothecation of the $900 note as security for the payment of the said $400 note was void. Sec. 6496, R. S. 1919; Keim v. Vette, 167 Mo. 389; Western Stg. & Warehouse Co. v. Glasner, 169 Mo. 38. The note for $400 given by Abramowitz to Ruth B. Runkle was tainted with usury. Kreibohm v. Yancey, 154 Mo. 67; Gen. Motors Acceptance Corporation v. Weinrich, 262 S. W. 425. (2) Unless a judgment is responsive to the issues set out in the pleadings, it is erroneous. Schneider v. Patton, 175 Mo. 684; Howard v. Scott, 225 Mo. 685; Davidson v. Davidson R. E. & Inv. Co., 249 Mo. 474.

RAILEY, C.—This is a suit in equity, brought and tried in the Circuit Court of Jackson County, Missouri, at Kansas City. It was tried on a second amended petition, which pleads in substance the following facts:

That for some time prior to August 16, 1919, Max Abramowitz was the owner of Lot 14, in Greendale, an addition in Kansas City, Missouri, although for convenience he carried the legal title to said lot in the name of his sister, Minnie Movitz, and her husband, Sol Movitz, defendants herein; that on said August 16, 1919, said Max Abramowitz sold said lot to this plaintiff, and caused the legal title thereto to be conveyed to him by Minnie and Sol Movitz by warranty deed, free and clear of all encumbrances done or suffered by him, except a deed of trust for $500 on which the sum of $250 had been paid; that on the date aforesaid and contemporaneously with the delivery of said warranty deed, plaintiff executed his promissory note for $900 to Minnie Movitz, payable in monthly installments of $10, payment of which was secured by a deed of trust of even date therewith, on the lot aforesaid, which was duly recorded on August 18, 1919, and in which R. C. Cashner was named as trustee for this plaintiff and Minnie Movitz; that while the latter was named as payee in said note, it really belonged to her brother, Max Abramowitz, and she in-

308 Mo. Sup.—39.

dorsed and delivered it to him; that subsequent to the delivery of said warranty deed, and said $900 note and deed of trust, Max Abramowitz, the owner of said note, informed this plaintiff that a sewer-tax bill was in existence, amounting to $80, which was a superior lien on said lot, and requested plaintiff to pay said tax in monthly installments, and that he would give plaintiff credit on his said $900 note, monthly, as he made the payments of said sewer-tax bill, which was a primary obligation said Abramowitz and Movitz and wife covenanted to pay under said warranty deed; that plaintiff has made the payments monthly on said sewer-tax bill, and said Abramowitz, the owner of said $900 note, failed and neglected to credit said note therewith; that subsequent to the 16th of August, 1919, said Abramowitz, Minnie Movitz and Sol Movitz borrowed money of Ruth B. Runkle, and executed their principal promissory note payable to her order, in the sum of about $400, due in six months after date, and to secure the payment of their note put up as collateral security said $900 note and deed of trust (including abstract of title to said lot); that said Ruth B. Runkle, for the use and forbearance of the money loaned, charged and received interest in excess of eight per cent per annum for said loan, which was more interest than she was allowed, or entitled to, under the law; that said loan at the time it was made, and now, is affected with usury; that said pledge and lien of collateral security was rendered void by virtue of Chapter 51, Revised Statutes 1919. Said petition further charges that after the maturity of said principal note of said Abramowitz, Minnie and Sol Movitz, said Ruth B. Runkle unlawfully and wrongfully transferred and delivered possession of said principal note, with the collateral security aforesaid, to defendant L. J. Silvara; that while the latter had possession of said collateral security, he was not the owner of same, and did not have the legal right to declare said installment note of $900 due, as it was not in default as to this plaintiff, on account of the owner of same having failed and neglected to credit the payment of the monthly installments on

said note, as they had been paid by plaintiff as aforesaid.

The petition further alleges that defendant L. J. Silvara, with the intention to cheat, wrong and defraud this plaintiff out of said lot, by the unlawful and wrongful foreclosure of said deed of trust which secured the payment of said $900 note, knew, or by the exercise of ordinary diligence might have known, of said agreement between plaintiff and the legal owner of said $900 note, that while plaintiff was making the monthly payments on said sewer-tax bill aforesaid, the amount paid by him would be allowed as credits on said installment note, and that there had been no default in the monthly payments of same; that said defendant Silvara had both actual and constructive knowledge of the fact that said Ruth B. Runkle had charged and received from said Max Abramowitz, Minnie and Sol Movitz, more interest on said loan than she was entitled to charge and exact under the law, making void the lien and pledge of said collateral security, and that said Silvara did unlawfully and wrongfully receive possession of said $900 note and deed of trust from Ruth B. Runkle.

It is further alleged in the petition that pursuant to the general scheme aforesaid, to cheat, wrong and defraud plaintiff, defendant Silvara made a demand on R. C. Cashner, trustee in said deed of trust, to advertise and sell plaintiff's lot on account of the alleged default in the payment of monthly installments of said note, which gave the owner and holder of same the right to declare all the installments of said note due, etc.; that said Cashner refused to act as trustee aforesaid and advertise or sell said lot, giving as his reason that there had been no default in the payment of the installments of said note, and so advised defendant Silvara, who then requested Overton H. Gentry, Jr., the Sheriff of Jackson County, Missouri, to act as substitute trustee and sell plaintiff's lot by virtue of said alleged default in said installment note and under the terms of said deed of trust; that said sheriff did unlawfully and wrongfully adver-

tise plaintiff's lot for sale and, on the 13th of May, 1920, said sheriff, as substitute trustee, sold said lot at an unfair price, and much less than its real value, to Neva J. Morris, who assigned her interest to defendant, Silvara, etc.; that said defendant Silvara did unlawfully and wrongfully take possession of said lot, and has been collecting rents from the same since the early part of the year 1921, all of which rents plaintiff claims as his own. It is further alleged that Max Abramowitz has sold and assigned to plaintiff all of his right, title and interest in said $900 installment note and deed of trust.

The petition concludes with a prayer, in which the court is asked to set aside the sale under said deed of trust, to cancel said trustee's deed, made by the sheriff as substitute trustee aforesaid, to defendant Silvara. He further prays that possession of said $900 installment note, deed of trust and abstract of title to said lot be given to this plaintiff; that defendant Silvara be directed to turn over all money collected by him, or his agents, as rent of said lot to this plaintiff, and for such other relief in equity as may be just, etc.

The answer of defendant Silvara denies that he ever entered into any agreement with his co-defendants, or any of them to cheat and defraud plaintiff. He denies that he purchased of Ruth B. Runkle the $412 note, described in petition, executed by said Abramowitz and Movitz, or any of them. He alleges that on or about March 24, 1920, he purchased from Ruth B. Runkle a promissory note executed by plaintiff herein in the sum of $900, the same being secured by deed of trust as described in the petition; that he purchased said $900 note before maturity, for value in due course and without notice of any equity in any other person, and without notice of any defense on the part of the maker of same; that he knew of no agreement between the maker and the former holders of said note. He further alleges that when said $900 note became delinquent, and he declared the same due, he made demand of plaintiff, and offered at that time to accept the amount which he paid for said

note, together with interest thereon, and he still offers to accept the sum of $412, the amount paid for said note, with interest, expenses and costs in connection therewith, up to the time of filing said answer. He admits that he caused the deed of trust securing said $900 note to be foreclosed, and has been in possession of the lot so foreclosed since the delivery of the trustee's deed to same. He concludes, with a general denial, and as follows: ''Wherefore having fully answered, this defendant prays to go hence and for his costs.''

Overton H. Gentry, Jr., filed an answer, and admitted therein that he was the sheriff of said county, and that as substitute trustee he sold said lot, and had no other interest in the matter except that as substitute trustee.

The reply is a general denial.

The case was tried by Judge Thomas B. Buckner on June 19, 1922, who rendered the following decree herein:

''(1)  That the trustee's sale, made on the 13th day of May, 1920, by Overton H. Gentry, Jr., as substitute trustee, of Lot 14 in Greendale, an addition in Kansas City, Missouri, was premature and void.

''(2)  That Ruth Runkle and defendant L. J. Silvara are guiltless of any charge of usury in connection with this controversy, or any knowledge of the same.

''(3)  The court finds that the defendant, L. J. Silvara, has expended in cash, over and above the amount which he has received as rent from said property, the sum of $817.05, for and in behalf of said Lot 14 in Greendale, an addition in Kansas City, Missouri, which said sum of $817.05 the court finds that defendant, L. J. Silvara is entitled to recover in this action.

''Wherefore, it is ordered, adjudged and decreed by the court that the trustee's deed, from Overton H. Gentry, Jr., as substitute trustee, to L. J. Silvara, recorded in Book B. 2164, at page 486, in the office of the Recorder of Deeds for Jackson County, Missouri, at Kansas City, to Lot 14 in Greendale, an addition in Kansas City, Mis-

souri, be and the same is hereby set aside and for naught held; it is further ordered, adjudged and decreed by the court that the defendant, L. J. Silvara have and recover from the plaintiff, Vernie Verdon, the sum of $817.05, and that said sum shall be a first lien against said Lot 14 in Greendale, an addition in Kansas City, Missouri; it is further ordered, adjudged and decreed by the court that said Lot 14, in Greendale, an addition in Kansas City, Jackson County, Missouri, shall be sold by the Sheriff of Jackson County, Missouri, and the proceeds applied as follows:

"(1)   To the payment of costs of sale.

"(2)   To the payment of costs of this action.

"(3)   To the payment of the defendant, L. J. Silvara in the sum of $817.05, and the residue, if any, to the plaintiff Vernie Verdon.

"And it is further ordered, adjudged and decreed by the court that the costs of this action shall be taxed against the defendant L. J. Silvara."

Motions for a new trial and in arrest of judgment were filed by plaintiff in due time, both of which were overruled, exceptions duly saved, and the cause appealed to this court.

In order to avoid repetition, we will consider the facts presented in the judgment supra, and in our opinion will review the findings made by the trial court and the testimony disclosed in the record.

I.  We agree with the trial court that on the facts presented in the record the sale made by the sheriff, as substitute trustee, was premature and is void. The plaintiff received a warranty deed to the property in controversy, which warranted the title against taxes of every description. Max Abramowitz owned the $900 note given by plaintiff, and secured by deed of trust on the lot in controversy. It was discovered about the time plaintiff acquired title to said lot, or soon thereafter, that there was a sewer tax against said lot for $77.96, which was a lien thereon before plain-

*Void Sale.*

tiff purchased same from Abramowitz, the latter being liable for the payment of said sewer tax. A tax bill had been issued by the City of Kansas, was outstanding, and remained unpaid. Thereupon Abramowitz agreed with plaintiff that the latter should pay this tax bill, and that the amount so paid should be credited as a payment on said $900 note given by plaintiff to Abramowitz for the purchase money on said lot. The plaintiff paid said sewer tax, but the amount so paid was not in fact credited on said note. On account of the sewer tax paid by plaintiff as aforesaid, there was no default in the payments due on said $900 note and, hence, the sale made by the sheriff, as substitute trustee aforesaid, was *coram non judice* and void.

II. The trial court found that the charge of usury made in the petition, was not sustained by the proof. We have reached a different conclusion, in respect to this matter. The evidence shows that subsequent to August 16, 1919, Max Abramowitz, Minnie and Sol Movitz borrowed money from defendant, Ruth B. Runkle, and executed their principal promissory note, payable to her order, in the sum of about $400, due in six months after date, and to secure the payment of their note put up as collateral security said $900 note and deed of trust (including abstract of title to said lot) and that she received for the use and forbearance of the money loaned interest in excess of eight per cent per annum.

*Usury:*
*Void*
*Pledge.*

Ruth B. Runkle testified as follows:

"Q. Who represented you in making this loan of $400 to Mr. Abramowitz? A. Mr. Bert Kratz.

"Q. Did Mr. Kratz represent you as your attorney in making the loan? A. He came to me for the money; asked if I could make the loan.

"Q. Did you know what commission he was charging? A. No. I believe he said something like $15.

"Q. You understood he was to get that $15? A. For his commission."

Bert Kratz testified as follows:

"Q.  Tell the court the facts about the loan that was made by Ruth Runkle to Max Abramowitz on or about September 22, 1919.  A.  Max came to me and wanted to borrow $400—

"Q.  (Continuing): Max came and wanted to borrow $400, and offered to put up as collateral for the $400 the note of Vernie Verdon which was made against this property.  Did he have that note there?  A.  Not that day.  Later on I told him what he would have to do and told him what I would charge for making the loan, and the rate of interest—charged $15 commission and six per cent interest on the note.  The note was made for six months.  . . .

"Q.  What did you charge him for that?  A.  $15 commission and six per cent interest.  I took that out of the $400, leaving him  $373 cash; paid him at the bank.

"Q.  On the $400 note you gave him $373?  A.  Yes, sir.

"Q.  And this note, 'Exhibit 2,' was delivered to you for Ruth Runkle?  A.  Yes, sir.

"Q.  As collateral security to the $400 note?  A. Yes, sir.

"Q.  Did you deliver this note, and the $400 note to Ruth Runkle?  A.  Yes.  She was at the bank at the time Max got the money."

After the maturity of the principal note of Max Abramowitz and Movitz and wife, said Ruth Runkle transferred and delivered to defendant L. J. Silvara said principal note of $400, and the collateral note of $900. We are of the opinion that under the evidence aforesaid, the $400 note was usurious, by reason of which, the pledge of the $900 note as security for the payment of same was void under the statute.  [Sec. 6496, R. S. 1919; Kreibohm v. Yancey, 154 Mo. l. c. 85; Keim v. Vette, 167 Mo. l. c. 401; Western Storage & Warehouse Co. v. Glasner, 169 Mo. l. c. 47.; Quinn v. Van Raalte, 267 Mo. l. c. 104 and cases cited; G. M. A. Corp. v. Weinrich, 262 S. W. l. c. 428; Mo. Discount Corp. v. Mitchell, 261 S. W. 743.]

The above section of our statute, and the authorities construing same, declare, in unequivocal terms, that the pledge of the $900 note taken as collateral security for the principal note of $400 is invalid and illegal, as shown by the undisputed facts in this case. Abramowitz transferred his interest in said $900 note to plaintiff, after the commencement of this suit, as shown by the testimony, without objection, and claims no further interest in said note. As plaintiff is *now* the owner of said $900 note, and none of the defendants have any interest in same, it should be surrendered to him.

III.    The remainder of the decree is not within the purview of the pleadings, and is in direct conflict with the conclusions heretofore announced.

The judgment below is reversed and the cause remanded with directions to the circuit court to set aside its decree and to dispose of the case in conformity to the views herein expressed. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.