WILLIAM PETRING, Respondent, v. A. JAY KUHS et al., LUDWIG HESSE and MISSISSIPPI VALLEY TRUST COMPANY, a Corporation, Trustees, etc., Appellants.—No. 38128.—171 S. W. (2d) 635.

Division One, May 4, 1943.

1198

*Charles P. Williams* for appellants.

*Albert E. Hausman* for respondent.

1200

DOUGLAS, P. J.—This is a suit to set aside a trustee's deed under foreclosure; to reinstate the deed of trust foreclosed; and to declare a present deed of trust to be inferior to the one reinstated.

Plaintiff is the owner of the deed of trust which he seeks to reinstate on the ground it had been fraudulently foreclosed. Hesse and the Mississippi Valley Trust Company, Trustees, the principal appellants, are the holders of the present deed of trust which plaintiff seeks to subordinate to his deed of trust.

Plaintiff, a retired butcher 67 years of age, and A. Jay Kuhs, a real estate man, had known each other for 28 years. Plaintiff had done business with Kuhs for years and had bought a number of deeds of trust from him and had traded various deeds of trust with him. In the course of these dealings, plaintiff, by a trade, acquired from Kuhs a deed of trust for $30,000 dated June 15, 1927, executed by the Opportunity Realty & Investment Company, of which Kuhs was president, and secured by property in one of Kuhs' subdivisions described as 1005 Hi-Pointe Place in St. Louis.

The principal note of $30,000 secured by the deed of trust was payable to plaintiff and was due five years after date. There were ten semi-annual interest notes of $900 each. Kuhs would usually deliver or mail to plaintiff his check for the interest as it fell due and obtain the interest note.

The trustee named in the deed of trust was Arthur Hines who was for thirty years a close friend of Kuhs, and acted at Kuhs' request as trustee in deeds of trust which Kuhs negotiated.

The condition of the deed of trust is as follows: "But if either one of said notes, or any part thereof, be not so paid at maturity, according to the tenor of the same, or if said taxes, general and special, be not promptly paid when due, or if default be made in due fulfillment of said covenants and agreements, or either of them, then this conveyance shall remain in force, and said party of the Second Part, whether acting in person or by attorney in fact appointed by instrument in writing, or, in case of death or absence from the city, or any other disability, or refusal to act, his successor in trust may proceed to sell the property hereinbefore conveyed, or any part thereof, at public vendue, or outcry, on the Floor of the St. Louis Real Estate Exchange, in the City of St. Louis, State of Missouri, provided that in the event of there being no such St. Louis Real Estate Exchange at and on the date of advertisement herein provided for, then at the East Front Door of the Court House in Said City of St. Louis and State of Missouri, to the highest bidder for cash, first giving twenty days' notice of the time, terms and place of said sale, and of the prop-

erty to be sold by advertisement published in some newspaper printed in the City of St. Louis, State of Missouri . . . "

On June 15, 1932, the maturity of the note, an instrument extending the note for two years, signed by Kuhs as President of the Opportunity Realty & Investment Company as the owner of the property and by "A. Jay Kuhs Co., Present Holder of Note or Holder's Agent" was delivered to plaintiff. This instrument was not recorded.

Thereafter, according to the petition, Kuhs, who was the dominating person in the various one-man corporations he used for his practices, fraudulently advertised a sale foreclosing the deed of trust and had the property sold without the knowledge or consent of plaintiff. The trustee's deed under foreclosure was dated May 12, 1933 and recorded the same day. The deed conveyed the property to the A. Jay Kuhs Realty & Investment Company.

In August, 1933, the latter company conveyed the property to Elmer E. and Martha Kuhs who placed a deed of trust of $25,000 on the property and immediately conveyed the property back to the company.

In March, 1939, that deed of trust was foreclosed and the property sold to Anton Huelsmann. The regularity of that foreclosure is not contested. The foreclosure in issue is the prior one of 1933. Huelsmann placed a deed of trust on the property for $10,000 dated March 28, 1939, in which Oreon E. Scott was named as trustee. This latter deed of trust was offered for sale to defendant trustee by the Oreon E. & R. S. Scott, a real estate firm, and was purchased by them as an investment for their trust estate. It is this deed of trust which plaintiff seeks to have subordinated to his deed of trust.

During all this time Kuhs was lulling plaintiff by paying the interest as it accrued and by giving him from time to time six additional successive extension instruments, each for one year, the last one expiring June 14, 1940. None of these instruments were recorded. None bore the signature of plaintiff who held the deed of trust and who would be the party to grant the extension. The space intended for the signature of the holder of the note was blank. No indorsement extending the maturity appears on the note.

It was not until July, 1940, that plaintiff learned his deed of trust had long since been foreclosed. He received this news in a letter from Kuhs sent from the Mexican border in which Kuhs said he was fleeing to South America because he was broke and was "compelled to quit the business and leave town." The letter advised plaintiff of the appellant's $10,000 deed of trust. With the letter was a deed of the equity to plaintiff and information about the building on the property and its tenants. Shortly after the receipt of the letter plaintiff instituted this suit.

Appellants defended below on the ground they purchased their deed of trust in good faith for value and before maturity. The court

found the issues for plaintiff and reinstated his deed of trust as a superior lien over appellants' deed of trust. An appeal was taken to this court.

The question for decision is which of said deeds of trust under these circumstances is entitled to priority, both parties having acquired their respective deeds of trust in good faith. This is not a suit where one of the parties has defrauded the other.

Arthur Hines, the trustee, testified for plaintiff. He stated that he was a man of education and an auditor by profession. He participated in a number of transactions for Kuhs, signing papers at his request and buying in and selling property for him. He had given Kuhs permission to use his name. Kuhs would give him small amounts of money for his services. He admitted his signature to the deed under the foreclosure. The deed was properly acknowledged. The notary public testified that Hines acknowledged the deed before him. The deed recited that Hines, the trustee, made the foreclosure sale at the Real Estate Exchange, the place provided in the deed of trust and in the advertisement of the sale. Hines, on the stand, denied he made the sale. But his testimony is evasive and unsatisfactory. He further stated: "I may have been down to the Real Estate Exchange on that day, but I did not make that sale." Plaintiff understands this to mean that the trustee was not present at the sale. If this is the case the sale would be void. While the trustee need not actually cry the sale the rule in this state is that the trustee must be present during the crying of the sale, "to observe the progress thereof, protect the interests of the parties concerned, to reject fraudulent bids made to frustrate the sale, and, if necessary, to adjourn the sale." Brickenkamp v. Rees, 69 Mo. 426; Polliham v. Reveley, 181 Mo. 622, 81 S. W. 182. The trust instrument may permit this duty to be delegated in which case the above would not be applicable but there is no such question here.

A study of the trustee's testimony does not convince us that it is sufficient to overcome the recitals of the deed. We have a statute which makes the recitals in a trustee's deed under foreclosure prima facie evidence of their truth. Sec. 3481, R. S. 1939. The recital concerning the sale is specifically covered by this statute. The evidence sufficient to rebut such a recital must be "clear and satisfactory." Elliott v. Sheppard, 179 Mo. 382, 78 S. W. 627. In 26 C. J. S., "Deeds" sec. 208, we find the rule expressed: "A deed will not be set aside because of invalidity or as not being what it purports to be, except on clear and convincing proof, a greater amount of proof being required to overthrow by parol evidence a deed which is properly signed, acknowledged, and delivered than is required to prove a nondelivery of the deed. A mere preponderance of the evidence is not sufficient, although the character of the evidence which will be regarded as sufficiently clear and convincing

may vary with the circumstances." We hold that the recital in the deed that the trustee sold the property has not been rebutted.

Plaintiff also objects to the sale because the trustee did not personally order and insert the advertisement giving notice of the sale which was published over the name of the trustee. We are of the opinion that this need not be done by the trustee himself. Furthermore, this objection falls within our finding that the trustee conducted the sale. In Munson v. Ensor, 94 Mo. 504, 7 S. W. 108, we held that the signing and the giving of the notice by the attorney for the trustee was proper where the trustee conducted the sale and the sale was fair and open. This would likewise be true if the trustee had the sale cried by an auctioneer under his supervision.

Although the deed of trust was foreclosed during the period covered by the first extension, the notice of sale and the trustee's deed both erroneously stated that payment of the principal and interest notes were in default.

There is no requirement in the deed of trust that the particular default be recited in the notice of sale nor does the statute make any such requirement. Sec. 3464, R. S. 1939, only provides that "such notice shall set forth the date and book and page of the record of such mortgages or deeds of trust, the grantors, the time, terms and place of sale, and a description of the property to be sold." We find in Jones on Mortgages, 8th Ed., Sec. 2395: "It is not necessary that the advertisement of a sale under a power should state that a default has occurred in the performance of the condition of the mortgage. The statement, that the sale is by virtue of the power given by the mortgage, necessarily implies that there has been a default. Of course, therefore, the notice need not state for what breach of the condition the land is to be sold." See Drake v. Rhodes, 155 Ala. 498; Model Lodging House v. Boston, 114 Mass. 133.

It is not claimed that the misstatement in the notice caused any injury or prejudice to plaintiff or in any wise affected the conduct of the sale. See 37 Am. Jur., Mortgages, sec. 683; Powers v. Kueckhoff, 41 Mo. 425. Under such circumstance the sale was not void because of such error. Nor did the same misstatement in the deed affect the deed's validity. We find no requirement that a trustee's deed must contain a recital of the default.

Under our decision in Wood v. Augustine, 61 Mo. 46, such a recital was found to be superfluous. We said in that case: "The sale by the trustee was authorized by a failure to pay the debts secured by the express provisions of the deed. The power to sell was not conditioned on the application of any particular creditor secured, but upon the failure to pay; *although the failure to pay the debt secured and the request of one of the creditors was recited in the deed made by the trustee, such recital was superfluous.* It was suffi-

cient to authorize a sale that there was a failure to pay the debts secured at the time they were due.'' (Our emphasis.)

Plaintiff correctly asserts that when there is no default a foreclosure is void. Verdon v. Silvara, 308 Mo. 607, 274 S. W. 79. But while there was no default in the payment of the notes there was a default existing at the time of the sale in the payment of the taxes assessed against the property for the years 1928 to 1932 inclusive. Payment of all taxes within the time required by law was a covenant of the deed of trust which expressly authorized the trustee to foreclose if such taxes were not promptly paid when due. As this covenant was breached the foreclosure was warranted. Cockrell v. Taylor, 347 Mo. 1, 145 S. W. (2d) 416.

''The commencement of a foreclosure of a deed of trust cannot be wrongful when there is a clear right to foreclose.'' Loeb v. Dowling, 349 Mo. 674, 162 S. W. (2d) 875. In that case we cited and quoted from Peterson v. Kansas City Life Ins. Co., 339 Mo. 700, 98 S. W. (2d) 770, 108 A. L. R. 583, which held that when the right to foreclose exists, the foreclosure sale passes the legal title to the property sold even though the power of sale be improperly executed.

It is not disputed that appellants are bona fide purchasers of their deed of trust for a valuable consideration without notice. Since the legal title to the property passed by the foreclosure sale appellants are not affected by the fact the purchaser at the foreclosure sale might have been a fraudulent one because a bona fide purchaser for a valuable consideration is not affected by the fraud in a prior conveyance although the grantor was the fraudulent grantee in the prior conveyance. Craig v. Zimmerman, 87 Mo. 475; Wineland v. Coonce, 5 Mo. 296; McDaniel v. Sprick, 297 Mo. 424, 249 S. W. 611; Williams v. Mackey, 227 Mo. App. 1016, 61 S. W. (2d) 968. The rule is stated in the Restatement of the Law of Trusts, sec. 287, as follows: ''If the trustee in breach of trust transfers trust property to a person who is not a bona fide purchaser and the transferee transfers the property to a bona fide purchaser, the latter takes the property free of the trust.'' This rule applies as well to a bona fide purchaser for a valuable consideration of a deed of trust on the property. Smith v. Holdoway Const. Co., 344 Mo. 8, 62, 129 S. W. (2d) 894.

On the other hand plaintiff argues that the sale was void and passed no title whatever to the purchaser at the sale because the sale was made without his request as the holder of the note and deed of trust. He leans heavily on Lustenberger v. Hutchinson, 343 Mo. 51, 119 S. W. (2d) 921, which held where a deed of trust requires the request of the holder as a condition to the foreclosure that a foreclosure without such request is void. See also St. Louis Mut. Life Ins. Co. v. Walter et al., 329 Mo. 715, 46 S. W. (2d) 166; Magee v.

Burch, 108 Mo. 336, 18 S. W. 1078; Plummer v. Knight, 156 Mo. App. 321, 137 S. W. 1019.

Plaintiff's deed of trust had no such requirement. There was no condition in his deed of trust making foreclosure dependent on the holder's request. Upon default in any of the covenants or agreements of the deed of trust, the trustee without more was authorized to foreclose. But plaintiff contends that such a request was necessary under the extension instruments. In them it was stated that upon default "the legal holder of said principal note or notes may, at his option, proceed to enforce payment thereof under the provisions of said deed of trust the same as if this extension had not been made." As we have pointed out, none of the so-called extension instruments were recorded. They were not signed by plaintiff who was the party who had the power to grant the extension. They were signed only by the Opportunity Realty & Investment Company as the owners of the property. The first one was also signed by A. Jay Kuhs Company as "Present Holder of Note or Holder's Agent." That company was not the holder nor is there any evidence it was the agent for the holder. It was not shown that the trustee had any knowledge of these instruments or their contents. If the language of the extension instrument is sufficient to require a request for foreclosure as a condition precedent to foreclosure, we do not find under the circumstances that it is binding on the trustee nor does it destroy his authority to proceed with foreclosure upon default in the payment of taxes conferred by the deed of trust. Where there is no such condition precedent the default alone is sufficient to authorize the trustee to proceed with the sale. Wood v. Augustine, 61 Mo. 46, supra.

Furthermore, it is not contended that appellants had any knowledge of such condition precedent in the extension instruments or of the instruments themselves. Under our ruling in Munson v. Ensor, 94 Mo. 504, 7 S. W. 108, supra, such instruments can in nowise affect the rights of appellants as bona fide purchasers since they were not recorded. In that case there was an unrecorded agreement imposing an additional condition on the right to foreclose not contained in the deed of trust. That condition was not observed and foreclosure was had in violation of it. We held that as the agreement was not recorded it did not affect the rights of a bona fide purchaser at the foreclosure sale who had no notice of it, and we refused to set aside the sale. In Voelpel v. Phoenix Mutual Life Ins. Co. (Mo. Sup.), 183 S. W. 679, we held that the terms of an unrecorded extension agreement are not binding on a subsequent purchaser without notice.

It appears to us that our decision in Butler Building & Investment Co. v. Dunsworth, 146 Mo. 361, 48 S. W. 449, rules this case. The facts are peculiarly apposite. In that case the deed of trust did not

require a request for foreclosure. The trustee in the deed of trust was empowered to foreclose merely upon default. The holder of the principal note did not request foreclosure and knew nothing of it. An innocent purchaser acquired the property. The question was whether his title was superior to the rights of the holder of the principal note. We held that the trustee, as to third persons, was the agent of both the grantor in the deed of trust and the holder thereof. In making the sale he acted within the scope of his authority as conferred by the deed of trust. As to all persons without notice, his representation as to the default was the statement of his two principals and binding upon them. We held that the sale had been made within the scope of the trustee's powers as conferred so that his deed passed the legal title. We found for the innocent purchaser and against the holder of the note. See also Adams v. Carpenter, 187 Mo. 613, 86 S. W. 445.

Williams v. Mackey, 227 Mo. App. 1016, 61 S. W. (2d) 968, supra, involves similar facts. The deed of trust did not require the request of the holder as a condition for its foreclosure. No request was made for the foreclosure. The trustee's deed erroneously recited that the foreclosure was at the request of the holder of the notes. The purchaser at the sale was not an innocent purchaser. But the purchaser placed a deed of trust on the property and then sold it to an innocent purchaser. The court found for the latter. It said: "Plaintiff . . . says the trial court erred in holding that the power to sell in the deed of trust securing plaintiff's notes was not conditioned and dependent upon the request of the legal holder thereof. The deed of trust in this case contained no such provision. It simply provided that, if the notes became due and were unpaid, then the acting sheriff of Greene County, in the event of the death of the named trustee, 'may proceed to sell the property.' This the sheriff did, after the notes were past due and condition broken, with no request from the owner of the notes and without the notes or deed of trust being in his possession. On the face of the proceedings, the sheriff acted within the apparent scope of his authority under the terms of the deed of trust. In conducting the sale, he acted as the agent of both the grantors in the deed of trust and the holder of the notes secured thereby, at least as to third persons. Butler Building & Investment Co. v. Dunsworth, 146 Mo. 361, 48 S. W. 449; West v. Axtell, 322 Mo. 401, 18 S. W. (2d) 328, l. c. 334; Regan v. Williams, 185 Mo. 620, l. c. 630, 84 S. W. 959, 105 Am. St. Rep. 600; Hull v. Pace, 61 Mo. App. 117, l. c. 122; Sherwood v. Saxton, 63 Mo. 78.

"Under the circumstances, plaintiff, the holder of the notes, would be bound by the acts of the sheriff, her agent, in conducting the sale within the scope of his authority, although no request was made by her that he advertise and sell the property; there being no such

provision in the deed of trust. Wood v. Augustine, 61 Mo. 46; Butler Building & Investment Co. v. Dunsworth, supra.''

Relying further on the Lustenberger case plaintiff insists he is entitled to recover on the equitable principle that where one of two innocent parties must lose because of a third party's fraud, if the equities are equal, the one who had the first lien or claim in point of time will be protected. In that case the holder of the original deed of trust recovered. There, as here, both parties were innocent. But with that the similarity ceases. Here the equities are not equal. In that case we held the foreclosure sale void, here it was not. In that case the one who had the later claim was negligent, in this the contrary is true. In this case plaintiff's deed of trust under its terms permitted the foreclosure sale which was had. By accepting such an instrument plaintiff, himself, made possible a sale without the necessity of actual notice to him. He accepted the first extension instrument without investigation or inquiry about the property when such would have disclosed the taxes were in default. He accepted the later extensions with the same complacency when an investigation as early as the second extension would have revealed the foreclosure and the property being held by one of Kuhs' companies. The equities not being equal, that principal has no application.

Accordingly, it follows that the judgment for plaintiff must be reversed and the cause remanded with directions to dismiss his petition.

It is so ordered. All concur except *Gantt, J.*, not sitting.