SNYDER v. THE CHICAGO, SANTA FE & CALIFORNIA
RAILWAY COMPANY, *Appellant.*

### Division One, December 11, 1895.

1. **School Fund Mortgage**: FORECLOSURE: STATUTE. Foreclosure of school fund mortgage under General Statutes, 1865, page 270, section 69, examined, and *held* sufficient.

2. ———: ———: SALE. Sale under foreclosure of a school fund mortgage *held* a sale for cash, as required by its terms.

3. ———: ———: ———. The sale on such foreclosure *held* not invalid because the order recited one of the bonds to be for $100, when in fact it was for $200.

4. ———: ———: LEGAL TITLE. A sale of the right, title, and interest of the mortgagor *held* to convey his legal title, though he had before his sale conveyed his interest to another.

5. ———: ———: SALE IN GROSS. The mere fact that the property conveyed by a mortgage was sold in gross is not sufficient to avoid the sale.

6. ———: SALE AT COURTHOUSE DOOR. A mortgage provided that the foreclosure sale should be made at "the east door of the courthouse" in K. At the time the courts were being temporarily held in a courthouse in K. *Held* that a sale at the east door of the courthouse subsequently erected in K. was valid.

*Appeal from Chariton Circuit Court.*—HON. W. W.
RUCKER, Judge.

AFFIRMED.

*Gardiner Lathrop, J. C. Wallace* and *S. W. Moore*
for appellant.

(1) The Holloway mortgage is not a statutory mortgage and is at best only a common law mortgage with power of sale. (2) The Holloway mortgage provided that the sale should be "for cash in hand." The

sale actually made was on credit, no .cash being paid.
This entitles the defendant to avoid the sale. (3) The
county court had no authority to sell, under the Hollo-
way mortgage, upon any other terms than cash in
hand, or to cancel the Holloway bonds except upon the
payment of cash. (4) The order of sale made by the
county court did not truly describe the debt, so as to
sufficiently identify the mortgage, and conferred no
authority on the sheriff to make the sale. (5) The
sheriff's deed, under the Holloway mortgage, only pur-
ports to convey the interest of said Holloway, and
upon the conceded facts, at the time of the sale and at
the time of the order of the court authorizing the sale,
Holloway had no title or interest in the property in
controversy. (6) The sale should be set aside for the
reason that it was made by the sheriff in mass, without
first offering for sale, and selling, that part of the tract
outside of the defendant's right of way. (7) At what
place should the sale under the Holloway deed of trust
have been made? (8) The trustee's deed to J. C.
Crawley is void for the reason that it was not made for
cash as provided for in the deed of trust and in the
advertisement. (9) The trustee's deed to J. C. Craw-
ley is void for the reason that it does not state within
what hours the sale took place. (10) The deed from
J. C. Crawley to plaintiff was voluntary, Mr. Crawley
acting only as attorney for plaintiff in making the pur-
chase.

*Crawley & Son* for respondent.

(1) It is an undisputed fact that the mortgage
from Holloway to Chariton county and the deed of
trust of Woods and wife to Snyder were both of them
subsisting and recorded incumbrances on the quarter
section of land at the date of defendant's entry, and

that Woods and wife, defendant's grantors, as stated by defendant in its original answer, "purchased said land subject to said mortgage, assuming the payment thereof." This being true, it follows, in the language of Judge MACFARLANE when the case was here before, that the sheriff's sale and deed to Snyder under said Holloway mortgage "swept away the rights defendant had procured by its deed from Woods." *Snyder v. Railroad*, 112 Mo. *loc. cit.* 540; *McShane v. Moberly*, 79 Mo. 41. (2) The record shows that said sales were conducted with the utmost publicity, fairness, and good faith on the part of the trustee and sheriff, after due notice had been published in each instance, and that all the requirements of the law and of said trust deed and mortgage were substantially and fully complied with. But, even had it been otherwise, said sales, being made under express powers contained in said trust deed and mortgage, were unquestionably sufficient to pass the legal title. *Grant v. Huston*, 105 Mo. 97; *Schanewerk v. Hoberecht*, 117 Mo. 22; *Kennedy v. Siemers*, 120 Mo. 73; *Company v. Donovan*, 120 Mo. 423; 2 Jones on Mortgages [4 Ed.], sec. 1792. (3) Defendant railway company is not now, and never was, entitled to redeem from said deed of trust and mortgage, or from either of them. The right of redemption from the lien of a mortgage of land exists as an incident to, and for the protection of, the estate of the mortgagor in the land itself; or, more exactly speaking, such right of redemption is itself an estate in the land. It is this right to redeem coupled with the right of possession, which, until foreclosure, constitutes the mortgagor's seizin and ownership. Bispham's Principles of Equity [3 Ed.], p. 195, sec. 151; 2 Perry on Trusts [2 Ed.], pp. 161, 602*j*. (4) The grant by Woods and wife to defendant of a way over the land for its trains, was,

at most, a mere easement; an incorporeal right to a servitude so long as the estate of said grantors continued, and nothing more. Said grantors did not part with their seizin or equity of redemption. The fee of the land and their estate therein remained as before. *Williams v. Plank Road Co.*, 21 Mo. 580; *Kellogg v. Malin*, 50 Mo. 496; *Hannibal Bridge Co. v. Schaubacher*, 57 Mo. 582; *Venable v. Railroad*, 112 Mo. 103; *Union Depot Co. v. Frederick*, 117 Mo. 138; *Chouteau v. Railroad*, 122 Mo. 375; *Railroad v. Swinney*, 38 Iowa, 182; Pierce on Railroads, p. 158; Const. of Mo., art. 2, sec. 21. (5) So that plaintiff by his purchase and deed from the trustee under the deed of trust, acquired the estate and title of Woods and wife just as the same existed at the date of the execution of the deed of trust in 1882, discharged and unburdened of said easement, and leaving in plaintiff, and in him alone, the right to redeem from the county mortgage. *McShane v. Moberly*, 79 Mo. 41; *Meier v. Meier*, 105 Mo. 411. (6) If defendant had ever been entitled to redeem, its equity to so do would have been forfeited by its laches and bad faith. *Medsker v. Swaney*, 45 Mo. 273; *Tatum v. Holliday*, 59 Mo. 422; *Stevenson v. Saline Co.*, 65 Mo. 425; *Reel v. Ewing*, 71 Mo. 17; *Stamper v. Roberts*, 90 Mo. 683; *Schradski v. Albright*, 93 Mo. 42; *Kennedy v. Siemers*, 120 Mo. 73.

BRACE, P. J.—This is an action in ejectment to recover possession of a strip of land in the southwest quarter of section 11, township 56, range 19, in Chariton county, inclosed and occupied by defendant as a right of way, running diagonally through said quarter section and containing about fourteen acres. The case was tried before the court without a jury; the plaintiff had judgment and the defendant appeals.

The facts, so far as necessary to be stated for the

purpose of this opinion, are that on the twenty-eighth of May, 1867, John B. Holloway, then the owner of said quarter section, executed a mortgage to Chariton county conveying the same to said county to secure the payment of $1,584.54 borrowed by him of the school funds of said county. In January, 1882, the said Holloway sold and conveyed said quarter section to O. H. Woods and wife, subject to said mortgage. On the ninth of February, 1882, the said Woods and wife executed a deed of trust with power of sale conveying said land to James Snyder, trustee, to secure the payment to plaintiff of a note of said Woods for the sum of $1,050.

In February, 1887, the defendant went into possession of the strip of land in said quarter section in controversy, and on the seventh of March thereafter the said Woods and wife executed and delivered a warranty deed therefor, to the defendant. On the fifth of February, 1889, the quarter section was sold under the deed of trust of the ninth of February, 1882; was purchased for the plaintiff by his attorney, who received the trustee's deed therefor, and transferred the title thus acquired to plaintiff.

On the twelfth of July, 1889, the quarter section was again sold, under an order of the county court foreclosing said mortgage to the county of the twenty-eighth of May, 1867, and the plaintiff became the purchaser thereof, and received a deed therefor, in pursuance of such sale, and, on the twenty-fifth of September, 1889, instituted this suit.

The cause was afterwards tried in the circuit court upon the issues then made, and judgment rendered for the defendant, from which the plaintiff appealed to this court, where the judgment was reversed and the cause remanded for new trial. Upon that appeal it was decided that the plaintiff was not estopped from asserting his right to the possession of the land in controversy

under the legal title acquired by him by his deed made in pursuance of the sale made in foreclosure of the county mortgage, and that his right of action was not barred by the statute of limitations (112 Mo. 527).

After the cause was remanded the defendant filed an amended answer, tendering new issues, upon which the case was tried the second time, and from the judgment in this second trial the present appeal is prosecuted.

The main issue tendered by the amended answer is that Holloway's equity of redemption acquired by Woods was not foreclosed by the sale made by order of the county court on the twelfth of July, 1889, for the following reasons:

"*First.* Because said pretended sale was not made at the courthouse in Keytesville, in which the circuit and other courts were held at the time of the execution of said mortgage deed, which was the courthouse designated and intended by the parties to said mortgage deed.

"*Second.* Because said sale was not made by the person who was sheriff of Chariton county at the time of the execution of said mortgage deed, as contemplated by said deed, and there was no provision in said instrument conferring such power of sale upon his successor in office.

"*Third.* Because said property was not sold for cash in hand as required by law, and by the terms of said mortgage deed, and by the terms of the advertisement giving notice of the sale, but was unlawfully attempted to be sold to plaintiff upon time payments and without the payment of cash, and thus a secret and unlawful preference was given plaintiff, which was a fraud upon this defendant, and others who might desire to bid upon said property.

"*Fourth.* Because said mortgage deed is so vague, indefinite, and uncertain that a resort to foreclosure in court should have been resorted to.

"*Fifth.* Because no proper, sufficient legal notice by publication of such sale was given in any newspaper printed and published in Chariton county, and because said attempted publication was not for the length of time required by law, and did not correctly give the time, terms of sale, place, and a description of the property to be sold.

"*Sixth.* Because there is no provision in said mortgage deed permitting a sale 'without suit on the mortgage,' as required by law, and a sale without suit on the mortgage is void.

"*Seventh.* Because the order of the county court, dated May 8, 1889, conferred no authority upon said O. B. Anderson; the power of said county court to order such sale, if any existed, being contained in, and confined to, an order of sale made of record by said county court in 1888, which said order of sale of 1888 was delivered to said O. B. Anderson, but was never executed by him."

The answer also alleges that the trustee's deed, made in pursuance of the sale of the fifth of February, 1889, is void for the following reasons:

"*First.* Because although it was provided in said deed of trust and in the advertisement of sale, that said sale would be for cash, yet the sale was not in fact made for cash, but by a secret arrangement upon credit, which was a fraud upon this defendant and upon others desiring to bid upon said property.

"*Second.* Because said trustee's deed does not state that thirty days' public notice of the time, terms, and place of sale, and of the property to be sold, had been given.

"*Third.* Because the Chariton *Courier*, in which the notice is said to have been given, is not, and was not at the time, a newspaper printed and published in Chariton county.

"*Fourth.* Because said trustee's deed does not purport to have been made according to the terms of the deed of trust, in that it does not state that the sale to J. C. Crawley was for cash."

And concludes with the following prayer:

"Wherefore, defendant prays that the said trustee's deeds may be set aside and for naught held, and that plaintiff being subrogated to the rights of the county, under the county mortgage, may be remitted to his remedy by foreclosure in court, to the end that the real estate covered by said deeds of trust may be sold in the inverse order of alienation to protect the defendant's rights, and for such other relief as may be equitable and just, and defendant herewith offers to pay such portion of the debt secured by such deeds of trusts as it ought in equity to pay, and to do and perform the orders and decrees of the court in the premises."

The school fund mortgage in question after reciting the bonds secured and conveying the said quarter section to the county in fee simple, with the usual clause of defeasance, contained the following provision in case of default: "But if default be made in the payment of the aforesaid bonds, or either of them, or any part of either of them, at the times when they shall severally become due and payable according to the tenor and effect thereof, then the sheriff of Chariton county may proceed to sell the said real estate or any part thereof at public outcry to the highest and best bidder for cash in hand, before the east door of the courthouse in Keytesville, first giving twenty days' notice of the time, terms of sale, place, and a description of the property to be sold, by advertisement in

some newspaper printed and published in Chariton county, to pay the aforesaid bonds and interest thereon, and shall make an absolute conveyance to the purchaser therefor."

The statute governing in such cases provided that, "every mortgage taken under the provisions of this chapter shall be in the ordinary form of a conveyance in fee, shall recite the bond, and shall contain a condition that if default shall be made in payment of the principal or interest, or any part thereof, at the time when they shall severally become due and payable, according to the tenor and effect of the bond recited, the sheriff of the county may, without suit on the mortgage, proceed and sell the mortgaged premises, or any part thereof, to satisfy the principal and interest, and make an absolute conveyance thereof in fee to the purchaser, which shall be as effectual to all intents and purposes as if such sale and conveyance were made by virtue of a judgment of a court of competent jurisdiction, foreclosing the mortgage." G. S. 1865, p. 270, sec. 69.

It was under this section of the statute that the mortgage was taken. The statute further provided that, "whenever the principal and interest, or any part thereof, secured by mortgage containing a power to sell, shall become due and payable, the county court may make an order to the sheriff, reciting the debt and interest to be received, and commanding him to levy the same, with costs, upon the property conveyed by said mortgage, which shall be described as in the mortgage; and a copy of such order, duly certified, being delivered to the sheriff, shall have the effect of a *fieri facias* on a judgment of foreclosure by the circuit court, and shall be proceeded with accordingly." 2 R. S. 1879, sec. 7113.

It was under this section of the statute that the

sale was made in pursuance of an order of the county court reciting the debt and interest to be received, the default in the payment thereof, and commanding the sheriff of said county to levy upon, advertise, and proceed to sell the real estate described in said mortgage "to the highest bidder for cash in hand at the east front door of the courthouse in the town of Keytesville in said county, during the sitting of the circuit court of said county at the July special term, 1889, thereof, first giving twenty days' notice of the time, terms, and place of sale and a description of the property to be sold by advertisement in some newspaper published in said Chariton county."

1.   The defendant's first contention is that the mortgage is not a statutory mortgage, and could not be foreclosed by the sale made by the sheriff in pursuance of said order of the county court for the reason that the word "interest" in the fourth line, and the words "without suit on the mortgage" in the seventh line of said section 69, are omitted from the condition of the mortgage, and for the further reason that said condition contains the words "at public outcry to the highest bidder for cash in hand before the east door of the court house in Keytesville, first giving twenty days' notice of the time, terms of sale, place, and description of the property to be sold by advertisement in some newspaper printed and published in Chariton county," stipulations not required by the statute.

The statute under consideration does not prescribe a form for the mortgage to be taken under its provisions.   And while the condition of the mortgage in question is not in the exact words of the section prescribing what that condition shall be, it does contain all the essential requirements of the statute and gives to the sheriff express and direct power, in case of

default, to foreclose the mortgage by sale in the manner therein prescribed, and there can be no question, under the repeated rulings of this court, that a sale made by the sheriff of Chariton county, under the order of the county court, in pursuance of the power thus granted, would have the effect of foreclosing the mortgagor's equity of redemption. *Mann v. Best,* 62 Mo. 491; *Grant v. Huston,* 105 Mo. 97; *Walters v. Senf,* 115 Mo. 524. Was the sale thus made, is the next question.

2. The appellant contends that it was not, for the reason that the mortgage provided that the sale should be for "cash in hand," and the sale was actually made on credit. It appears from the recitals in the sheriff's deed, executed and acknowledged in open court on the twelfth day of July, 1889, that the land was sold on that day in pursuance of the power contained in said mortgage and in compliance with the order of the county court to the plaintiff for cash and the receipt of the purchase money is therein acknowledged. Parol evidence was introduced tending to prove that the money was not immediately paid to the sheriff, but the payment deferred to await the approval of the sale by the county court at its next sitting on the fifth of August, 1889, at which term the sheriff was required to make report of such sale, pending which the plaintiff negotiated a loan from the county from the same fund of an amount equal to the principal of the debt secured by the mortgage, and the securities given for this loan, together with an amount in cash equal to the accrued interest on the mortgage debt, and the expenses of executing the trust, were accepted in payment of the plaintiff's bid, the mortgage satisfied, the deed delivered, and filed for record, on the twelfth day of September, 1889.

This was all done fairly and openly in the usual

and ordinary mode of doing this kind of business in the management of this fund, and in it we perceive no abuse of the authority conferred upon the county officers by the statute, and nothing that gives color to the contention that this was not a cash sale within the meaning of the power conferred in the mortgage.

3.   The mortgage was given to secure the payment of seven bonds in different amounts, each dated twenty-eighth day of May, 1867, and each payable twelve months after date. One of these bonds was for the sum of $200.   In the order of sale by the county court this bond was by mistake recited as a bond for $100, and it is urged that this misrecital vitiates the sale, and, in support of this contention, *Honaker v. Shough*, 55 Mo. 472, is cited.

It appears from the statement in that case that the order misdescribed *the land* given to secure the debt, and, hence, was held to be insufficient to identify *the mortgage*.   But in the order under consideration the land is correctly described, and there is no difficulty in identifying the mortgage under which the sheriff was directed to make the sale, as well as the debt it was given to secure, and as the power of the sheriff to sell proceeded directly from the mortgage, and not from the order of the county court, which has been held to be "no more than a demand upon the sheriff that he proceed to execute the powers specified in the mortgage" (*Grant v. Huston*, 105 Mo. 97) this mistake in the order could not affect the validity of the sale made in pursuance of such power.

4.  It is next urged that as the sheriff only exposed to sale "all the right, title, and interest of the said John B. Holloway in and to said tract of land," and by his deed only "assigned, transferred, and conveyed all the right, title, interest, and estate of the said John B. Holloway in and to said real estate" to the plaintiff,

and as the said Holloway had parted with all his interest in the land prior to the sale the sheriff sold and conveyed nothing and the plaintiff acquired nothing by his purchase and deed.

That the legal title to the real estate passed by the mortgage and the sheriff's deed made in pursuance thereof is beyond question. *Schanewerk v. Hoberecht*, 117 Mo. 22; *Kennedy v. Siemers*, 120 Mo. 73; *Springfield, etc., Co. v. Donovan*, 120 Mo. 423; *Biffle v. Pullam*, 125 Mo. 108. The only interest in the land that Holloway parted with by his deed to Woods was his equity of redemption; the only interest the defendant acquired by his deed from Woods was Holloway's right to redeem. The only standing the defendant claims in this action is the right to redeem by reason of having acquired Holloway's equity of redemption and to be standing in his shoes. This right was subject to foreclosure by a sale and conveyance in pursuance thereof by the sheriff made as provided in the mortgage, the effect of which was to wipe out Holloway's equity of redemption to whomsoever it may have been by him transferred. Defendant's right, being only Holloway's right taken subject to the mortgage, was necessarily taken subject to the foreclosure of that right, and was lost by such foreclosure.

5. It is next urged that the sale under the mortgage should be set aside for the reason that it was made by the sheriff in mass. There is nothing in the circumstances of the sale in question to buttress such a complaint, and it is well settled law in this state that the mere fact that the property conveyed by a deed of trust is sold in gross is not *per se* sufficient to avoid the sale. *Benkendorf v. Vincenz*, 52 Mo. 441; *Bank v. Stumpf*, 73 Mo. 311; *Chase v. Williams*, 74 Mo. 429.

6. The sale was made at the "east door of the courthouse" in Keytesville as provided in the mort-

gage. This courthouse was not constructed at the time the mortgage was executed, but the courts were then being temporarily held in the schoolhouse in said city. From this defendant contends that the sale was not made at the place contemplated by the parties, and should, therefore, be avoided. This contention must be ruled against the defendant on the authority of the recent case of *Stewart v. Brown*, 112 Mo. 171, in which the same question was maturely considered *in banc* and settled.

7. We have thus noticed all the objections urged against the foreclosure proceedings under the school fund mortgage and find none of them tenable. We have also examined those that have been urged against the proceedings under the deed of trust and do not think any of them sufficient to impair that sale and the deed executed in pursuance thereof. These objections, however, need not be noticed in detail, as the proper foreclosure of the school fund mortgage "swept away the rights defendant had secured by its deed from Woods" (112 Mo. *loc. cit.* 540) and its defense in the case. The judgment is affirmed. All concur.