Mark CUSUMANO, Plaintiff–Respondent,

v.

OUTDOORS TODAY, INC., Defendant–Appellant.

No. 41766.

Missouri Court of Appeals, Eastern District, Division Three.

Nov. 12, 1980.

Alan J. Baker, Clayton, for defendant–appellant.

Robert Adler, Clayton, for plaintiff–respondent.

DOWD, Presiding Judge.

Plaintiff, the owner of an apartment unit located in Clayton, Missouri, brought this unlawful detainer action to regain possession of the apartment from defendant, Outdoors Today, Inc. The parties entered into a written lease agreement whereby defendant was entitled to possession of the apartment unit from June 1, 1978 through December 31, 1978, with rent fixed at three hundred dollars per month. Outdoors Today, Inc. continued to occupy the unit through May 18, 1979, which was the date

of trial for this action. According to the terms of the written lease, defendant was required to pay twenty—one hundred dollars in rental payments for the seven month period ending December 31, 1978. Both parties agreed that defendant paid a total of twenty—four hundred dollars. However, during trial the parties were in disagreement as to the characterization and effect of the additional three hundred dollar payment.

Defendant gave plaintiff a six hundred dollar check when the parties executed their lease agreement. The lease provided that this payment constituted the June and December, 1978 rents which are the first and last months of the lease. Plaintiff's part—time bookkeeper testified that she recorded twenty—one hundred dollars in rental payments by defendant. The bookkeeper's records indicated that three hundred dollars for the June rent was received, but the bookkeeper did not recall who tendered this amount. The bookkeeper testified that if rent payments were made directly to the plaintiff, she would record that amount plaintiff forwarded to her. The records indicated that defendant paid the rent for July, August, September and October. In November, defendant sent the bookkeeper a check for six hundred dollars. The bookkeeper assumed this check represented payment for the November and December rents and recorded it as such, even though defendant had already paid the December rent when the lease was executed.

Plaintiff testified that while he received the initial six hundred dollar check upon execution of the lease, he did not know how this payment was recorded in his bookkeeper's records. Plaintiff acknowledged receipt of a total of twenty—four hundred dollars from defendant, but stated that three hundred dollars of this amount was an overpayment of rent caused by defendant's six hundred dollar payment in November rather than the three hundred dollars he was required to pay pursuant to the terms of the lease. Plaintiff also testified that he attempted to return the three hundred dollars on several occasions in December and never accepted any rental payments from defendant after the November, 1978 payment. Furthermore, plaintiff stated that he asked defendant to leave the premises in December and January, and employed an attorney during December for the purpose of having defendant removed.

Mr. John Tuchschmidt, president of the defendant corporation, testified that the six hundred dollar check in November was for the November and January, 1979 rents, although he did not believe the check specified on its face that it was for the January rent. Mr. Tuchschmidt testified that he was never offered a refund of the three hundred dollars and was never told to vacate the premises during 1978. Defendant's attorney also introduced evidence that plaintiff had instituted a prior action in January of 1979, in which defendant was identified as a month to month tenant during January. That action apparently was dismissed.

The trial judge, after amending his initial order, found that plaintiff was entitled to restitution of the premises and twelve hundred dollars damages. The trial judge's findings of controverted fact issues included finding that defendant did not pay rent for January, 1979, that defendant was not a month to month tenant during January and that no landlord—tenant relationship existed between the parties in January.

■ Before reaching defendant's arguments we are presented with a motion to dismiss this appeal filed by plaintiff—respondent. Plaintiff has filed an affidavit with this court stating that on June 5, 1979 defendant agreed to vacate the premises in dispute and plaintiff agreed to stay execution of his judgment. Plaintiff now contends that any judgment rendered by this court would have no practical effect upon any existing controversy, and therefore, this appeal is moot. We disagree. This court cannot, under the circumstances of this case, accept one party's contention that a dispute which was carried to trial no longer exists. We hold the appeal is not moot. Therefore, we address the issues raised by defendant on this appeal.

 This unlawful detainer action was brought under that portion of Section 534.-030 RSMo 1978, relating to persons holding over property after termination of the time that property was let to them. In order to maintain such an action a landlord–tenant relationship must have existed between the parties prior to any holding over. *Conley v. Dee*, 246 S.W.2d 385, 386 (Mo.App.1952). Defendant contends that the trial court erred because it found that no landlord–tenant relationship existed. However, examination of the record indicates that no such finding was made. Defendant, pursuant to Rule 73.01(1)(b), requested findings on the following fact issue to be made by the trial judge on the proceedings held May 18, 1979: "State whether or not a landlord–tenant relationship *exists* between Plaintiff, Mark Cusumano, and Defendant, Outdoors Today, Inc." (emphasis added). The trial court's finding was as follows: "No landlord relationship *exists*." (emphasis added). The logical inference drawn from the above question and answer is that the trial judge was making a finding as to whether such a relationship existed on May 18, 1979 and he found that no tenancy relationship existed on May 18, 1979. There is substantial evidence in the record indicating a landlord–tenant relationship existed from June 1, 1978 through December 31, 1978 to support an unlawful detainer action.

 Defendant next contends that there was insufficient evidence to support the trial court's finding that no landlord–tenant relationship existed between the parties during January of 1979. Defendant argues that a rent payment for January, 1979 was accepted by plaintiff and that plaintiff's earlier suit identifying defendant as a month to month tenant for January, among other things, indicate a tenancy relationship existed in that month. In this court tried case, where there was a conflict in evidence, the trial judge determines the credibility of the witnesses, and may accept or reject all, part or none of the testimony.

*Prudential Property & Cas. Ins. v. Cole*, 586 S.W.2d 433, 434 (Mo.App.1979). This court is obliged to accept as true the evidence and permissible inferences which may be drawn, favorable to the prevailing party, and to disregard the contradictory testimony. *S.G. Adams Printing v. Central Hardware Co.*, 572 S.W.2d 625, 628 (Mo.App.1978).

 In order for some character of tenancy to result from a tenant's holding over, the *landlord* must indicate, in some manner, his *consent* to the new tenancy. The mere holding over by a tenant, standing alone, does not create a new tenancy. *Millhouse v. Drainage Dist. No. 48 of Dunklin County*, 304 S.W.2d 54, 59 (Mo.App. 1957). Plaintiff testified that no rent was received from defendant after the November, 1978 payment, the additional three hundred dollars received was an overpayment by defendant, plaintiff attempted to return this sum and defendant was asked to leave the premises in December, 1978. This testimony indicates the plaintiff–landlord did not assent to a new tenancy. While defendant's testimony contradicted each of the above statements, we must give due regard to the trial court's opportunity to judge the credibility of the witnesses. Thus, we conclude there is substantial evidence to support the trial court's finding that no tenancy existed in January, 1979.

 Defendant's final contention of error relates to whether he received proper notice to vacate the premises. However, the finding that no tenancy existed between the parties in January of 1979 disposes of the notice issue. It is well established in Missouri that no notice or demand is necessary to maintain an unlawful detainer action against a tenant holding over after the end of a fixed term. Section 441.070 RSMo 1978; *Cook v. Cureatz*, 466 S.W.2d 133, 135 (Mo.App.1971); *Kilbourne v. Forester*, 464 S.W.2d 770, 775 (Mo.App.1970); *Millhouse v. Drainage Dist. No. 48 of Dunklin County*, 304 S.W.2d 54, 59 (Mo.App. 1957).[1] Defendant continued in possession

1. We note that Section 441.060(1) RSMo 1978 requiring one month's notice prior to termination of a "tenancy by sufferance" does not apply to the facts presented in this case. The "tenancy by sufferance" referred to in this statute is not created by the mere holding over by a

beyond the term fixed in the lease without the landlord's consent and no notice to quit the premises was required.

Judgment affirmed.

REINHARD and CRIST, JJ., concur.

tenant after a fixed term. Notice would be required only if the continued holding was made with the express or implied consent of the landlord. *Kilbourne v. Forester*, 464 S.W.2d 770, 775–776 (Mo.App.1970).