**Tim MARTIN and Jeri Martin,
Respondents,**

v.

**John LORREN and Jan
Lorren, Appellants.**

**No. 19319.**

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 20, 1994.

**354**

Jim S. Green, Sikeston, for appellants.

John Hall Dalton, Jr., Dalton, Treasure and Mowrer, Kennett, for respondents.

CROW, Judge.

Plaintiffs, Tim Martin ("Tim") and Jeri Martin, filed this suit July 9, 1993, to eject Defendants, John Lorren and Jan Lorren, from a one-acre parcel of real estate ("the parcel"). Plaintiffs' petition averred Tim bought the parcel at a foreclosure sale January 20, 1993.[1]

Defendants counterclaimed, averring, *inter alia,* that the foreclosure sale was improper because it was held at the wrong time of day. Defendants prayed the trial court to declare they own the parcel.

Plaintiffs moved for summary judgment. The trial court granted the motion, awarding Plaintiffs possession of the parcel and money damages for Defendants' occupancy of it starting July 18, 1993.

Defendants appeal. With one exception, noted *infra,* there is no issue of fact.

Defendants borrowed money from a bank in 1991, securing the loan by a deed of trust

on the parcel. In December, 1992, the trustee gave notice that the parcel would be sold because Defendants had defaulted on the loan. The sufficiency of the notice is not in dispute. Insofar as pertinent to this appeal, the notice stated the sale would occur:

"... on Wednesday, the 20th day of January, 1993, at the South door of the Courthouse in the City of Kennett, Dunklin County, Missouri, between the hours of 9:00 o'clock A.M. and 5:00 P.M. ..."

The notice further provided that the sale was to be "for cash in hand."

The trustee began the sale at 9:35 a.m., on the appointed date at the designated site. Tim submitted the highest bid, $20,000. The trustee accepted the bid and the bidders dispersed before 10:00 a.m.

At 10:35 a.m., that day, Defendants filed a bankruptcy petition in the United States Bankruptcy Court, Eastern District of Missouri. As we understand the parties, they agree that the bankruptcy filing resulted in an "automatic stay" per 11 U.S.C.A. § 362, barring any further activity by the trustee, the bank, and Tim in regard to the parcel.

On February 12, 1993, the bank filed a motion in the Bankruptcy Court for relief from the stay. On March 23, 1993, the Bankruptcy Court entered an order vacating the stay with respect to the parcel and permitting the bank "to take such other and further action with respect to the property ... as they may deem proper."

On May 28, 1993, the trustee executed a deed conveying the parcel to Tim. On June 18, 1993, the bank received a $4,000 check from Tim and loaned Plaintiffs $16,000. Inferably, Plaintiffs secured the loan by a deed of trust on the parcel. The bank credited $20,000 against Defendants' debt.

The next day, June 19, 1993, Plaintiffs served notice on Defendants to vacate the parcel by June 24, 1993. Defendants did not comply; this suit followed.

The first of Defendants' two points relied on reads:

**"The court erred in granting summary judgment to the [Plaintiffs] because the**

---

1. Why Jeri Martin was a plaintiff is unexplained.

automatic stay of section 362 of the United States Bankruptcy Code stopped (stayed) the foreclosure before it was completed.

**A. The foreclosure was not properly conducted in that (1) the time of the sale as noticed was 9:00 a.m. to 5:00 p.m. and must therefore be held at the customary hour of 10:00 a.m.; and (2) the notice called for the sale to be for cash but the sale was instead financed by the creditor.**

**B. The foreclosure was not complete because payment in cash as advertised was not received at the sale.**

**C. The creditor has admitted the stay went into effect when the creditor asked the Bankruptcy Court to lift the stay to allow it to proceed, but the foreclosure was not readvertised [sic] nor renoticed [sic] after the stay was lifted."**

▇ Plaintiffs moved this Court to dismiss the appeal, insisting the above point (and also Defendants' second point) violate the "wherein and why" requirement of Rule 84.04(d), Missouri Rules of Civil Procedure (1994). *See: Thummel v. King,* 570 S.W.2d 679 (Mo. banc 1978). We took Plaintiffs' motion with the case.

Although Defendants' points are not paradigms of adroit draftsmanship, we decline to dismiss the appeal. We have endeavored to deduce the import of the points by seining the argument that follows them—a chore we are not obliged to undertake. *Draper v. Aronowitz,* 695 S.W.2d 923, 924[3] (Mo.App. E.D.1985); *Tennis v. General Motors Corp.,* 625 S.W.2d 218, 224[9] (Mo.App.S.D.1981). We shall address the claims of error as we divine them.

▇ Paragraph "A" of Defendants' first point, as we fathom it, hinges on the premise that the "customary hour" for foreclosure sales in Dunklin County is 10:00 a.m. In support of that hypothesis, Defendants refer us to a stipulation presented to the trial court which read, in pertinent part:

"John Hall Dalton, Jr. and the attorneys in the firm of Dalton, Treasure and Mowrer would testify that the customary time

for foreclosure sales in Dunklin County is only limited to any time between 9:00 a.m. and 5:00 p.m.

Judge Flake McHaney would testify that the customary time ... for foreclosure sales in Dunklin County is about 10:00 a.m. ... but some foreclosures are at other times and there is no Court rule or established practice as to time...."

▇ The standard of review in appeals from summary judgments is set forth in *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371 (Mo. banc 1993). The appellate court views the record in the light most favorable to the party against whom judgment was entered. *Id.* at 376[1]. The nonmovant is accorded the benefit of all reasonable inferences from the record. *Id.* at [3].

Viewing the record that way, we hold it presents a fact issue, *i.e.,* is there a "customary time" for foreclosure sales in Dunklin County and, if so, is that time 10:00 a.m.? The relevance of that question is found in § 443.327.1, RSMo Cum.Supp.1992, which reads, in pertinent part:

"The trustee exercising a power of sale granted in any deed of trust ... may in the trustee's discretion set the time for sale at any commercially reasonable time. The time for sale will be deemed to be commercially reasonable if the sale is held between the hours of 9:00 a.m. and 5:00 p.m. on the date of sale. If no time is stated in the notice of sale, then the sale shall be held at the time customary for such sales in the county...."

The theory of error in clause "(1)" of paragraph "A" of Defendants' first point, as we comprehend it, is based on a progression of assumptions, each of which must be valid in order for the theory to prevail. The assumptions, as we understand them, are set forth in the next five paragraphs.

1. The customary time for foreclosure sales in Dunklin County is 10:00 a.m.

2. Because the foreclosure notice here did not state a specific time for the sale, § 443.327.1, quoted *supra,* required the trustee to hold the sale at 10:00.

3. Because the trustee began the sale at 9:35 and accepted Tim's bid before 10:00, the auction was a nullity.

4. Because the auction was a nullity and there was no further sale-related activity before the "automatic stay" went into effect at 10:35, no valid sale occurred on the scheduled date.

5. Because there was no valid sale on the scheduled date and the trustee conducted no sale after the stay was vacated on March 23, 1993, no valid sale has ever taken place; hence, Defendants still own the parcel.

The lone case cited by Defendants in support of the above theory is *Stone v. Stone*, 176 S.W.2d 464 (Mo.1944). The sole proposition of law for which Defendants cite *Stone* is that if the high bidder at a foreclosure sale refuses to comply with the terms of his bid and the trustee elects to resell the property but allows the bidders to disperse without proclaiming the time for the resale, the trustee must re-advertise. *Id.* at 467.

That did not occur here. The trustee did not reject Tim's bid and endeavor to resell the parcel. The trustee accepted Tim's bid and, after the "automatic stay" was vacated, deeded the parcel to Tim.

*Stone* would apply only if the auction here was invalid and the trustee undertook to resell the parcel. For the reasons that follow, we hold the auction was valid.

*Judah v. Pitts*, 333 Mo. 301, 62 S.W.2d 715 (1933), cited by Plaintiffs, was a suit in equity to set aside a foreclosure sale conducted pursuant to a power of sale in a deed of trust. *Id.* 62 S.W.2d at 716. The notice stated the date of sale but did not specify the hour. *Id.* at 719. The Supreme Court of Missouri held the notice sufficient, observing:

> "... there is nothing in the evidence tending to show that by reason of the failure to state within or between what hours the sale would be made interested persons or prospective bidders were misled or prevented from being present at the sale...."

*Id.*

The stipulation, mentioned earlier, provided that a representative of the bank would testify there were between ten and fifteen people at the sale, including himself, the trustee and the trustee's lawyer. The stipulation, as we read it, further provided that there were bids on the parcel by the bank, by Tim and by another bidder.

Defendants did not plead, and nothing in the record suggests, that the trustee began the sale at 9:35 to limit the number of potential bidders or for any other ulterior purpose. Defendants do not assert any new bidders showed up at 10:00, expecting the sale to begin then, nor do Defendants argue that the parcel would have brought a higher price had the sale began at 10:00.

Assuming, arguendo, that the customary time for foreclosure sales in Dunklin County is 10:00 a.m., the issue thus becomes whether § 443.327.1 nullifies the auction here because the trustee began 25 minutes before the customary time. In addressing that issue, we note § 443.327.1 does not say what the consequences are if the notice of sale states no time for the sale and the trustee starts the sale at a time other than the customary time.

■ We begin our analysis by recognizing that a trustee exercising a power of sale under a deed of trust is required to exercise sound discretion and to conduct the sale in a manner which renders the sale most beneficial to the debtor at the best possible price. *Boatmen's Bank of Jefferson County v. Community Interiors, Inc.*, 721 S.W.2d 72, 76[2] (Mo.App.E.D.1986). Nothing in the record here suggests the trustee did otherwise, and Defendants make no such contention.

Furthermore, § 443.327.1, in requiring foreclosure sales to be held at a commercially reasonable time, provides that a time between 9:00 a.m., and 5:00 p.m., will be deemed commercially reasonable. The sale here, having begun at 9:35 a.m., was held at a commercially reasonable time.

Finally, as observed earlier, the record is bare of any indication that the trustee began the sale at 9:35 for any improper purpose, and the record demonstrates Defendants were not harmed in any way because the trustee did not begin the sale at 10:00.

For the above reasons, we hold that even if the customary time for foreclosure sales in Dunklin County is 10:00 a.m., § 443.327.1 did

not invalidate the auction here merely because it began at 9:35 and ended before 10:00. The obvious corollary is that the fact issue of whether there is a customary time for foreclosure sales in Dunklin County (and, assuming there is, whether the time is 10:00 a.m.) does not require reversal. The theory of error in clause "(1)" of paragraph "A" of Defendants' first point is meritless.

■ The theory of error in clause "(2)" of paragraph "A" of Defendants' first point, as we comprehend it, is, like the theory in clause "(1)," based on a progression of assumptions, each of which must be valid in order for the theory to prevail. The assumptions, as we understand them, are set forth in the next three paragraphs.

1. Because the foreclosure notice provided that the sale was to be "for cash in hand," Tim was required to pay the trustee $20,000 cash when the trustee accepted Tim's bid.

2. Tim never paid any cash to the trustee; he paid the bank $4,000 by check and the bank financed the balance of the bid by loaning Plaintiffs $16,000.

3. Because Tim never paid the trustee $20,000 cash, no valid sale ever occurred; hence, Defendants still own the parcel.

Defendants cite no case holding that where the foreclosure notice specifies the sale is to be for cash, the sale is void if the successful bidder pays partly by check and partly by funds borrowed from the creditor.

*Webb v. Salisbury,* 327 Mo. 1123, 39 S.W.2d 1045 (1931), cited by Plaintiffs, answers Defendants' "failure-to-pay-cash" argument. There, the successful bid at a foreclosure sale was $3,800. The mortgagors sued to set the sale aside, complaining that the bidder (the holder of the notes secured by the deed of trust) paid the trustee nothing. The Supreme Court of Missouri held that inasmuch as the mortgagors (the makers of the notes) received credit for the entire $3,800 against their debt, they could not complain. 39 S.W.2d at 1052[12]. *Accord: Snyder v. Chicago, S.F. & C. Ry. Co.,* 131 Mo. 568, 33 S.W. 67, 70[2] (1895).

Here, Defendants do not assert the bank failed to properly credit them, in full, for

Tim's $20,000 bid. Indeed, the stipulation provided that $20,000 was credited against Defendants' debt to the bank.

Because the record demonstrates Defendants are in the same position as they would have been had Tim paid the trustee $20,000 cash at the conclusion of the auction, we reject the theory of error in clause "(2)" of paragraph "A" of Defendants' first point.

■ Paragraph "B" of Defendants' first point asserts the foreclosure was not "complete" because Tim paid no cash at the sale. We infer Defendants' theory of error is that because Tim paid for the parcel after the automatic stay was vacated instead of before it took effect, the foreclosure was invalid, hence Defendants still own the parcel.

Defendants cite no authority supporting that hypothesis.

As we have seen, the order of the Bankruptcy Court vacating the stay allowed the bank to take such other and further action with respect to the parcel as the bank deemed proper. The order did not purport to nullify anything that occurred before the automatic stay took effect. That is consistent with the proposition that the automatic stay is effective only prospectively and does not undo anything that occurs before the bankruptcy petition is filed. *See:* 1 Mo. Bankruptcy Practice, § 7.3 (MoBar 1992).

The facts here are similar to *In re Brown,* 75 B.R. 1009 (Bkrtcy.E.D.Pa.1987), cited by Plaintiffs. There, the auction at a foreclosure sale was completed before the automatic stay took effect; however, the successful bidder had not yet paid or received a deed. The Bankruptcy Court vacated the stay to allow those steps to be taken. Nothing in the opinion suggested that the sale had to be re-advertised and a new auction conducted.

*In re Gooden,* 21 B.R. 456 (Bkrtcy.N.D.Ga. 1982), cited by Defendants, does not aid them. It dealt with whether, under Georgia law, a mortgagor's right of redemption was extinguished when the high bid was accepted at the auction, or whether the right survived until the bidder paid and received a deed. Defendants concede in their reply brief that they never attempted to redeem.

Inasmuch as Defendants furnish no authority for paragraph "B" of their first point, and the scant authority that exists is contrary to it, we find paragraph "B" without merit.

Paragraph "C" of Defendants' first point, as we grasp it, is predicated on the assumption that the foreclosure sale was invalid and, as no new sale ever occurred, Defendants still own the parcel. That is a rescript of the earlier contentions in Defendants' first point, which we have rejected. Paragraph "C" warrants no further discussion. Defendants' first point is denied.

■ Defendants' second point, presented as an alternative to their first, maintains the trial court erred in. ejecting them from the parcel in that they became tenants at sufferance when Tim bought the parcel and were entitled to "30 days notice" before they had to vacate.

As reported earlier, Tim paid for the parcel June 18, 1993. The next day, Plaintiffs served notice on Defendants to vacate by June 24, 1993.

Defendants rely on § 441.060.1, RSMo 1986, which reads:

"A tenancy ... by sufferance ... may be terminated by the person entitled to the possession by giving one month's notice, in writing, to the person in possession, requiring him to remove."

We do not believe Defendants became tenants at sufferance, within the meaning of § 441.060.1, when Tim bought the parcel. Before foreclosure, Defendants occupied the parcel as owners, not tenants. Defendants cite no authority for the theory that an owner occupying land which is sold at foreclosure automatically becomes a tenant at sufferance of the purchaser.

Although we find no case addressing the subject, *Cusumano v. Outdoors Today, Inc.*, 608 S.W.2d 136 (Mo.App.E.D.1980), is helpful. It involved. a tenant who refused to vacate upon expiration of a fixed-term lease. The tenant maintained the owner never gave proper notice to vacate. *Id.* at 139. The court held:

"It is well established in Missouri that no notice or demand is necessary to maintain an unlawful detainer action against a tenant holding over after the end of a fixed term. Defendant continued in possession beyond the term fixed in the lease without the landlord's consent and no notice to quit the premises was required."

*Id.* at 139–40 (citations omitted).

The court in *Cusumano* specifically rejected the notion that § 441.060.1 required the owner to give the occupant a month's notice. The court said:

"The 'tenancy by sufferance' referred to in [§ 441.060.1] is not created by the mere holding over by a tenant after a fixed term. Notice would be required only if the continued holding was made with the express or implied consent of the landlord. *Kilbourne v. Forester*, 464 S.W.2d 770, 775–776 (Mo.App.1970)."

*Cusumano*, 608 S.W.2d at 139–40 n. 1.

■ Nothing in the record here indicates Plaintiffs, after Tim bought the parcel, manifested in any way that Defendants could remain there as tenants. On the contrary, after paying for the parcel, Plaintiffs promptly notified Defendants to vacate. Although this occurred five months after the auction, the automatic stay had prevented the trustee from deeding the parcel to Tim for several weeks.

*Berner v. Gebhardt*, 87 Mo.App. 409 (1901), the lone case cited by Defendants in support of their second point, is inapplicable. It involved a tenant in possession when the owner sold the property. The record established that the occupant was a tenant from month to month and the new owner never gave proper notice to vacate. *Id.* at 413.

Applying the rationale of *Cusumano*, 608 S.W.2d at 139–40, we hold that because Defendants occupied the parcel as owners, not tenants, before Tim bought it, and because Plaintiffs never indicated Defendants could remain on the parcel thereafter, Defendants never became tenants at sufferance, hence § 441.060.1 did not require Plaintiffs to give Defendants a month's notice to vacate. Defendants' second point is denied.

■ One loose end remains. The judgment did not specifically address Defendants' counterclaim. However, in granting Plaintiffs the relief they sought, the trial court implicitly held Defendants had no right, title or interest in the parcel.

■ If a judgment, by implication, necessarily carries with it a finding upon a counterclaim, the judgment will be sustained as final even though the counterclaim is not mentioned. *Glick v. Glick*, 372 S.W.2d 912, 915[7] (Mo.1963). The judgment here is sufficient to deny the counterclaim and to declare that Tim owns the parcel by virtue of the trustee's deed.

Judgment affirmed.

PARRISH, J., concurs and files concurring opinion.

GARRISON, P.J., dissents and files dissenting opinion.

PARRISH, Judge, concurring.

I concur. However, I share the concern addressed in the dissenting opinion of Garrison, J. I write separately in order to express that concern.

In this case there is no suggestion that the timing of the sale detracted from efficient and honest handling of the foreclosure sale. Under these circumstances, I agree with the assessment in the principal opinion that the slight variance from what might be the customary time for conducting foreclosure sales should not invalidate this sale. However, this opinion should not be taken as carte blanc authority to disregard customary times for conducting foreclosure sales in counties in which there are such customs. Absent giving notice of a definite time for commencing a foreclosure sale, trustees who vary from such customary times do so at their peril.

GARRISON, Presiding Judge, dissenting.

I respectfully dissent. In doing so, I agree with that portion of the majority opinion which concludes that under the standard of review required by *ITT Commercial Finance Corp. v. MidAmerica Marine Supply Corp.*, 854 S.W.2d 371 (Mo.1993), a genuine issue of fact was presented concerning whether there existed a "customary time" for foreclosure sales in Dunklin County. As I understand the majority opinion, however, it concludes that when no specific time is contained in the notice, a sale conducted at a time different than the "customary time" is not invalid unless the owner pleads and proves that the trustee did so to limit the number of potential bidders or for some other ulterior purpose, that the property would have brought a higher price had the sale been conducted at the "customary time," or that other bidders were excluded by reason of the timing of the sale. Proof of those matters, however, may not be available. For instance, a debtor may not be able to determine the identity or existence of those who would have participated had the sale been conducted at the customary time or how much the property would have brought if other bidders had been present.

Section 443.327.1 authorizes a foreclosure sale between the hours of 9:00 a.m. and 5:00 p.m., and in doing so recognizes that any time within those limits would be "commercially reasonable." It then provides that "[i]f no time is stated in a notice of sale, then the sale shall be held at the time customary for such sales in the county." I construe this statute to mean that where, as here, no specific hour for the sale is contained in the notice, it must be conducted at the customary time.

In the instant case, it is undisputed that the sale commenced before what may have been the customary time. The majority opinion emphasizes that the variance between the timing of the actual sale and what may have been the customary time was slight. In my opinion it is significant, however, that the sale was both commenced and completed prior to 10:00 a.m.

As noted by the majority, it is the duty of the trustee to conduct the sale in a manner which is most beneficial to the debtor, which includes obtaining the best possible price. In keeping with that, one of the purposes of a foreclosure sale notice is to apprise the public of the time of the sale. *Graham v. Oliver*, 659 S.W.2d 601, 604 (Mo.App.S.D.1983). Permitting a sale at some time other than the customary time, where no time is speci-

fied in the notice, does little to foster that purpose but instead would invite suggestions of collusion in the timing of a sale and would detract from, rather than promote, confidence in the handling of foreclosure sales.

*Judah v. Pitts,* 62 S.W.2d 715, cited by the majority opinion, also seems to indicate that if there is a customary hour for such sales, the sale should be conducted at that time. In approving a sale where the notice listed only the date of the sale without specifying any time, the court acknowledged that there was *no evidence indicating either that potential bidders were misled or prevented from being present at the sale* "or that the sale was not made at the usual hour for such sales as established by custom in that county." *Id.* at 719.

In the instant case, this court has concluded that there is a genuine issue of fact as to whether the customary time for foreclosure sales in Dunklin County was 10:00 a.m. Based on my interpretation of § 443.327.1 and *Judah,* I disagree with the conclusion of the majority that, even if that were true, Defendants would not be entitled to relief.

Based on the above, I believe the trial court erred in sustaining Plaintiffs' motion for summary judgment.